DeFOREST RADIO COMPANY, respondent,

*v.*

RADIO CORPORATION OF AMERICA, appellant.

[Decided February 1st, 1926.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes, who filed the following opinion:

"The DeForest company manufactures and sells radio apparatus. The radio company is one of its competitors, and it is said that competition is keen. The radio company for the past two or three years has planted spies in the complainant's factory in Jersey City to learn, it is claimed, its trade and trade secrets. Probably half a dozen of them at times held jobs in the complainant's works, doing the bidding of the radio company, and all the while pretending to loyally serve both employers, for pay from each. Upon the filing of the bill the radio company was enjoined to remove the spies, to discontinue the practice, from making use of the information obtained, and the written reports and data were ordered delivered up and impounded with a master, and the defendant was ordered to show cause why the injunction should not continue until final hearing.

"The radio company admits imposing its spies, as employes, on the complainant, not, however, it says, to pry into the affairs, generally, of the complainant and pirate its inventions and business, but to obtain information to prove and establish, judicially, that the complainant was infringing some of its patents, as it suspected, and it claims to have discovered, and offered proof to show, that the complainant has been a chronic infringer of patents, and at the present time is infringing one of its patented devices, and it is argued that, therefore, the complainant is not in court with

clean hands, and, consequently, is not an acceptable suitor in equity. To this end the defendant has shown that back in 1906 the complainant's predecessor was decreed to have infringed a Marconi company patent, and again in 1917 another patent of that company known as the Flemming patent on a vacuum tube. It appears that in the latter suit, on a counter-claim, the Marconi company was also decreed to have infringed the DeForest company's patent on its vacuum tube. And, again, it is shown that later the complainant's patent was declared to infringe the so-called Armstrong patent on a regenerative tube radio set owned by the Westinghouse company, and that the complainant resorted to divers schemes to evade the decree, and that it was enjoined and adjudged in contempt and fined. An alleged breach of a covenant not to sell radios for commercial purposes and the alleged violation of an injunction at the suit of the radio company in this court restraining the breach are also testified to. This suit was dismissed on final hearing. These and other things are cited as the reason for the espionage in the distant past. They, however, have no bearing on the present controversy on the question of unclean hands, the only ground on which the defendant hopes to escape responsibility, though they may, as history, lend color to the defendant's claim that the complainant is now infringing. The defendant's spies were in the complainant's service when the bill was filed, so it claims, and the defendant admits that they were there until two weeks before, and for, as the defendant asserts, to discover whether the complainant was using a certain filament wire—thoriated wire—in its tubes in violation of what is known as the Langmuir patent, which the defendant has a license to use. The complainant admits using thoriated wire, but denies the validity of the patent, and also denies that it is infringing the patent. That issue is pending and is yet to be determined. But if the complainant is in fact infringing the defendant's patent, that does not necessarily involve moral turpitude sufficiently to invoke the doctrine of clean hands, for it is commonly recognized that a patent is regarded as nothing more than a

license to sue, and that an invention has no owner until he is judicially found, and often he is not until by the court of last resort.

"The complainant ought not to be denied a hearing on the threshhold of its appeal to equity upon the case made out against the defendant. The defense of justification for an admittedly invidious practice, if it is a defense, ought not to be decided on this motion unless it is clear beyond question, and that it is not. Moreover, I am not satisfied that the efforts of defendant's spy system were confined, as it is claimed, to ferreting out infringements and violations of the covenant mentioned. It would seem to have been entirely unnecessary to the detection of either, or for that matter of any other alleged infringement, for the finished products are on sale and procurable in the open market. Surely, samples of the thoriated wire are, and, besides, a spool of it had been furnished the defendant by the complainant, and all the information as to its use and as to the breach of covenant was as readily obtainable outside the complainant's works as by the use of false servants in it. I am not at all content with its explanation that the defendant's aims were solely self-protective. I am impressed that it sought a line on all the complainant's activities, and, certainly, its orders to the spies were not short of that. Their espionage was general. However that may be, the case, as it stands, convicts the defendant, by its own confession, of unlawful conduct, by mean and reprehensible methods, for no one admires a spy nor his works, not even his employer. Whether spying through debauched servants is justifiable, and whether the facts upon which the justification rests convict the complainant of unclean hands, are matters to be settled only at final hearing, and until then the defendant will be enjoined and the information impounded."

*Messrs. Wall, Haight, Carey & Hartpence,* for the respondent.

*Mr. John L. Griggs,* for the appellant.

*99 N. J. Eq.* DeForest Radio Co. *v.* Radio Corp. of America.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Backes.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ. 15.

*For reversal*—None.