61 N.J. Super. 340 (1960)
160 A.2d 660
UNITED BOARD & CARTON CORPORATION, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM J. BRITTING, ET ALS., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1960.
Decided May 12, 1960.
*342 Before Judges PRICE, GAULKIN and FOLEY.
Mr. James A. Major argued the cause for the defendants-appellants (Messrs. Rosenberg, Schmidt & Greenhalgh, attorneys).
Mr. Isadore Glauberman argued the cause for the plaintiff-respondent.
PER CURIAM.
R.R. 1:7-1(c) requires that the statement of questions involved shall set "forth each question separately," and R.R. 1:7-1(e) that "[t]he argument for the appellant * * * shall be divided, under appropriate headings distinctively printed, into as many parts as there are points to be argued." In violation of these rules defendants have lumped all of the alleged errors in the following "Statement of Question [sic] Involved":
"Was it not error for the trial court to enter an injunction restraining the defendants for a period of two years from doing business with any customer of the plaintiff when it affirmatively appeared that there were no restrictive covenants and no trade secrets *343 or confidential information involved, the basis of the decision being that the defendants had been guilty of a divided allegiance while in the employ of the plaintiff, and when it affirmatively appeared that the plaintiff had knowingly practiced deception on its customers for a period of years and insisted that the defendants continue such deception?"
All of the reasons which they urge for reversal are argued under one point, entitled "The Trial Court Erred in Restraining The Defendants From Soliciting Customers of The Plaintiff."
Disregard of the rules makes our task more time-consuming, but that is not the chief reason for the rules. Analyzing a brief which is not laid out according to the rules is like traveling an unmarked road in strange territory. We may reach our destination in spite of the hardship, but we may lose our way. When that possibility is presented we are compelled, in our desire to do justice to the offending litigant himself, to suppress the brief, under R.R. 1:7-9, and order a new one. In the case at bar we have concluded not to suppress the brief, but to note that our task in finding and studying the defendants' arguments has not been an easy one, and to emphasize the importance of the cited rule to the end that its requirements may be followed more rigidly.
The facts are sufficiently stated in the trial court's full and thorough opinion, and we shall not restate them except to the extent necessary to dispose of the specific questions hereafter discussed.
One of defendants' contentions is that plaintiff is barred from equitable relief because of "unclean hands." The trial court's only reference to this point was to say (emphasis ours):
"They conducted a campaign among the customers disparaging plaintiff's products, which each of them had sold exclusively to these same customers for many years. Boxes with 38-pound liners, instead of 42-pound liners, as required by I.C.C. regulations, had been sold by these defendants for years to the same customers, in accordance with a generally accepted trade custom to meet cut-throat competition, without any substantial complaints. Armed with this half-truth, *344 which they themselves had known of for a long time, they set out to convince the customers that they were being cheated by their employer. Presumably, William J. Britting would have conveniently forgotten the 38-pound liners, if his salary request of $25,000 had been granted. They did not give the employer even a sporting chance to explain or defend itself. They pictured their own employer as a fraud and a cheat and made representations that if an order was placed with Carton Sales, the customer would get what he ordered. How they squared themselves with the customers, from whom they had procured orders for years, with full knowledge of the facts, is left to conjecture."
The evidence in the record is not sufficient to support a finding that misrepresenting the boxes was "in accordance with a generally accepted trade custom," or that such deception was necessary "to meet cut-throat competition." Beyond that, if the doctrine of "unclean hands" does apply to the case at bar, plaintiff should be debarred from relief even if every other box manufacturer cheated his customer in the same fashion.
However, we hold that "unclean hands" is not a defense which these defendants may assert against this plaintiff upon the issues here involved. First, the plaintiff's allegedly wrongful conduct toward its customers is not sufficiently connected with or related to the dispute with the defendants to permit defendants' interposition of this defense. "Relief is not to be denied because of general iniquitous conduct on the part of the complainant or because of the latter's wrongdoing in the course of a transaction between him and a third person." 19 Am. Jur., Equity, § 473, p. 327; Medical Fabrics Co. v. D.C. McLintock Co., 12 N.J. Super. 177, 181 (App. Div. 1951); Casini v. Lupone, 8 N.J. Super. 362 (Ch. Div. 1950); Tami v. Pikowitz, 138 N.J. Eq. 410, 413 (Ch. 1946); Munn & Co. v. The Americana Co., 83 N.J. Eq. 309, 313 (E. & A. 1914). See also Loughran v. Loughran, 292 U.S. 216, 228, 54 S.Ct. 684, 78 L.Ed. 1219, 1226 (1934); Langley v. Devlin, 95 Wash. 171, 163 P. 395, 401, 4 A.L.R. 32 (Sup. *345 Ct. 1917); Annotation, 4 A.L.R. 44. Second, the alleged misrepresentation had been begun by Densen Banner Co., Inc. years before 1954, when that company had been bought by and made a division of plaintiff corporation. One of the Densens remained in charge of the manufacturing of the corrugated boxes and continued the deceit, but Mr. Stuhr, president of United, testified that he knew nothing of it until April or May 1959, and that he stopped it at once when he learned of it. If that be so, plaintiff did not have "unclean hands." Cf. Vulcan Detinning Co. v. American Can Co., 72 N.J. Eq. 387 (E. & A. 1907). Defendant William J. Britting testified that he told Stuhr of the cheating in 1955 and 1957. The trial court made no express finding as to when Stuhr first knew of the misrepresentation, but there is no dispute that it was stopped before the filing of the complaint. For all of these reasons, in the light of the circumstances here presented, the defense of "unclean hands" may not be asserted. Medical Fabrics Co. v. D.C. McLintock Co., supra; cf. DeForest Radio Co. v. Radio Corp. of America, 99 N.J. Eq. 456 (E. & A. 1926).
Defendants urge other arguments to support their contention that no injunction should have issued against them. We concur in the able opinion of the trial judge rejecting these arguments.
Even if plaintiff is entitled to an injunction, defendants argue, the injunction (a) should not have barred them from selling folding boxes to plaintiff's customers, (b) should not have barred them from soliciting those of plaintiff's customers to whom defendants never sold, and (c) should not have been for two years.
As to (a) respondent's brief says: "[T]here is no basis for the statement by defendants that they are restrained from dealing in folding boxes as distinct from corrugated boxes. The judgment expressly recites that the case involves the corrugated box business of the plaintiff." If there remains any doubt in the minds of the defendants as to the meaning of the judgment after this concession by plaintiff, *346 we are sure plaintiff will join with them in obtaining any necessary clarification from the trial judge.
We agree with appellant as to (b). As the trial judge said in his opinion, "each [defendant] had an assigned list of plaintiff's customers, upon whom the assigned defendant alone called for sales or service." All the defendants except William J. Britting were only salesmen. Britting, in addition to being a salesman, was a salesmanager, and a "liaison man" between the customers, the salesman and the plaintiff. At the conclusion of the testimony the trial judge announced that he would grant "a temporary injunction restraining the defendants and their corporate enterprise, Carton Sales, Inc., from soliciting or doing business with any of the former customers of the plaintiff which prior to their severance of the employment relationship was serviced by these defendants." (Emphasis ours) The parties thereafter stipulated that the trial court should proceed to final judgment without further testimony. The court then filed the opinion above mentioned, and in it concluded that "if defendants are restrained for a limited period of two years from soliciting or doing business with those customers whom they sold, while working for the plaintiff, a proper, equitable solution of defendants' wrong will be reached. It shall be so ordered." (Emphasis ours)
However, the judgment subsequently entered enjoined the defendants "from continuing doing business directly or indirectly with any customers of the plaintiff corporation as they appear on a certain list of plaintiff's customers marked in evidence as exhibit P-13." P-13 is a record of all of plaintiff's customers, many of whom were "serviced" by salesmen other than the defendants. As was pointed out by the trial judge, none of the defendant salesmen had any contact with the customers of the non-defendant salesmen, except William J. Britting. The defendants did influence one or more of the non-defendant salesmen, who remained with the plaintiff, to divert business to defendants' corporation. Beyond that, there is nothing in the record to indicate that *347 William J. Britting or any of the other defendants improperly attempted to entice customers of the non-defendant salesmen from plaintiff.
There were introduced in evidence the records of the sales made by Carton Sales, Inc., beginning with the very first sale in November 1958 and extending to shortly before the hearing in June 1959. This covered not only the period of surreptitious solicitation, from the organization of Carton Sales in September 1958 to the defendants' resignations in March 1959, but the period of the open solicitations thereafter as well, and there is no reason to believe that the defendants had been successful in winning away any customers other than those whose names appeared in those records. By the same token there was no reason to fear after so many months that defendants would thereafter obtain any more of plaintiff's customers by virtue of any disloyal activities during the time of defendants' employment with plaintiff. Under those circumstances, it is our view that the injunction should have been limited to "those customers whom they sold, while working for the plaintiff," plus the customers of non-defendant salesmen whose business defendants caused to be diverted to Carton Sales up to the time of the institution of this action.
Considering all of the facts in the case and the factors mentioned by the trial judge in his opinion, we consider the two-year duration of the injunction eminently reasonable.
The judgment should be modified as indicated in this opinion and, as so modified, is affirmed. The case is remanded to the trial court for further proceedings not inconsistent with this opinion. No costs.