H. and S. MANUFACTURING CO.,
Plaintiff,

*vs.*

BENJAMIN F. RICH CO., RICHARD J. GUYER, and FRANK CHAIKEN,
Defendants.

*New Castle, May 18, 1962.*

*Edmund N. Carpenter, II* and *William E. Wiggin,* of Richards, Layton & Finger, of Wilmington, for plaintiff.

*Daniel L. Herrmann* and *John T. Gallagher* of Herrmann, Bayard, Brill & Gallagher, of Wilmington, for defendants.

MARVEL, Vice Chancellor: This litigation is basically concerned with damages allegedly caused a small aluminum and storm window and door business known as H. & S. Manufacturing Co. as a result of the successful attempt of one of its employees, Richard J. Guyer, with the assistance of others, to set up a competing business incorporated under the name of Benjamin F. Rich Co. Injunctive relief was prayed for at the onset of the case, however, purely pecuniary relief, including punitive damages based on a claim of alleged trade defamation, is now sought after final hearing.

Plans for the rival business here under attack are claimed to have had their origin in discussions between Guyer, his fellow employee, Benjamin Spiller, and other H. & S. employees. Later, the defendant Frank Chaiken joined in the discussions, and ultimately agreed to supply most of the financial backing needed for the establishment of a storm window and door business designed to compete with the trade. The end result of this activity was the incorporating of The R & H Company, which was formed by Guyer, Spiller and Chaiken at the end of August, 1957.

At the time of the matter complained of and up until the time Guyer and Spiller left H. & S. early in September 1957, the affairs of the company were managed by an office force of four persons, including the president, John J. Halko, while the production part of the

business, except for occasional help from certain members of the office staff, was performed by nine or ten artisans working in the shop. Plaintiff's principal stockholder and chief executive officer at all times during the period covered in the complaint was John J. Halko.

The complaint, as originally framed, charged that the defendant Richard J. Guyer, while an officer of the plaintiff, " * * * illegally conspired with another officer of the plaintiff and with defendant Frank Chaiken and others to organize the defendant corporation and launch it in the same business as the plaintiff in the same area as that in which plaintiff was operating * * *." The original complaint then went on to charge that the defendant Chaiken " * * * knew that his actions in organizing and launching the defendant corporation required defendant Richard J. Guyer as well as another officer of plaintiff to breach their duty of loyalty to the plaintiff as officers thereof * * *."

Other allegations of the complaint were that defendants on going into business pursuant to their conspiracy, sold their products to plaintiff's customers and purchased from plaintiff's suppliers. Finally, in the remaining undismissed portions of the original complaint [1] plaintiff charged that " * * * defendants unlawfully interfered with plaintiff's business and slandered plaintiff by knowingly and falsely telling and causing others in their behalf to tell plaintiff's employees, customers and suppliers that plaintiff was insolvent and bankrupt and inducing a large number of plaintiff's employees to leave plaintiff and become employees of the defendant corporation."

Allegations concerning the planting of newspaper stories during an early phase of this litigation as well as charges that defendants had attempted to injure plaintiff's relationships with its customers and employees by maliciously giving out false information concerning plaintiff's intentions, operations and production, were set forth in two

---

1. Those allegations of the original complaint which have been dismissed charged a breach of covenant on the part of Richard J. Guyer not to engage in the business of manufacturing or selling aluminum windows and doors in Delaware for a period of two years after leaving plaintiff's employ and also charged defendants with the appropriation and misuse of plaintiff's so-called trade secrets.

supplemental complaints filed on April 8 and June 8, 1959. In the latter supplemental complaint, specific persons,[2] who, it is claimed, were improperly persuaded to leave plaintiff's employ, are named, and complaint is made of defendants' alleged efforts to persuade customers not to trade with plaintiff as well as efforts to divert away from plaintiff opportunities for business profits which rightfully belonged to plaintiff.

Prior to hearings on those portions of the original complaint which have been dismissed, defendants had moved for summary judgment with particular emphasis on the case made out for Chaiken as a mere investor in the defendant corporation, which motion was denied (see opinion reported in 39 *Del.Ch.* 380, 164 *A.2d* 447), and this is the opinion of the Court after final hearing at which defendants moved for dismissal after plaintiff had rested.

The issues remaining in the case are basically concerned with charges pertaining to derogatory comments allegedly made by the individual defendants about plaintiff's financial condition, defendants' alleged improper solicitation of plaintiff's customers and suppliers, and the taking over or attempted taking over by defendants of certain business opportunities, which, according to plaintiff, could have with reasonable diligence been secured for plaintiff if Guyer and his fellow employee, Spiller, had in fact been loyal to their employer. Plaintiff's contention is that the evidence in the case establishes that until a date early in September 1957, the defendant Guyer and Benjamin Spiller were ostensibly loyal employees of plaintiff but that secretly during the course of that year such persons were not only making plans for the establishment of a competing business but were doing so on plaintiff's time and at plaintiff's expense. There is no doubt but that these two persons did early in September 1957 abruptly leave plaintiff's employ without prior notice of their then completed plans to enter into a business enterprise with the defendant Frank Chaiken in direct competition with plaintiff. The basic question remaining to be decided is whether or not such change was lawfully accomplished.

Plaintiff contends that pursuant to a conspiracy which the defendant Guyer and Spiller developed largely during the first eight

2. No mention of the persons therein named was made at trial.

months of 1957, and which the defendant Chaiken ultimately joined, defendants made preparations for and embarked on their own business venture in September of that year, proceeding thereafter not only to sell to plaintiff's customers but also to purchase from plaintiff's suppliers. It is further contended that while the planning for this move was necessarily carried out in large part on plaintiff's business premises, preparations were made in such a secret manner that knowledge of defendants' purposes was not brought home to plaintiff's president, Halko, until the new business known as Benjamin F. Rich Co. was ready to enter into production.

Plaintiff at trial stressed what it deemed to be the unfair and surreptitious aspects of the scheming engaged in by Spiller and Guyer as they worked out details for a competing business, which, when fully organized, they hoped would cripple plaintiff's ability to compete effectively with such former employees and with the trade in general. Some of the actions claimed to have been taken were allegedly perpetrated in an individual capacity, others jointly by Spiller and Guyer, later joined in by Chaiken upon his becoming a part of the allegedly unlawful competitive moves against plaintiff. Plaintiff contends that those actions complained of which it has proven make up a pattern which in its totality clearly establishes in Guyer's case a violation of the principle of agency set forth in § 393 of the Restatement of the Law, Agency, namely: "Unless otherwise agreed, an agent is subject to a duty not to compete with the principal concerning the subject matter of the agency."

While Chaiken and the defendant corporation are charged as well with separate unlawful acts for which plaintiff seeks relief including an accounting from the corporate defendant, they are claimed to be also implicated as co-conspirators in Guyer's and Spiller's scheming and thereby additionally liable to plaintiff merely because they allegedly assented to and implemented the earlier planning of the defendant Guyer.

Specifically, the claimed acts of disloyalty on the part of Guyer are alleged to be the thwarting of negotiations between plaintiff and the Benada Division of Textron, Inc. at a point when, according to plaintiff, it was about to consummate a contract for substantial sup-

plies of low price aluminum from such supplier (Mr. Halko having been led in the meantime to believe that negotiations were proceeding favorably), the discouraging of purchases by the established down-state firm of I. D. Short Company, and the gradual lining up of plaintiff's employees and customers for absorption into defendants' contemplated business. All of these injurious actions, according to plaintiff, were given force by the circulation of false rumors that plaintiff was virtually bankrupt, a falsehood that was made at least partially effective because of Halko's state of health during the early part of 1957 and also by reason of partially successful efforts on the part of Guyer and Spiller to keep Halko away from his plant. Plaintiff then points out that no evidence was introduced at trial to indicate that plaintiff's financial situation was at the time in fact unstable in any real sense.

Plaintiff submits that its evidence establishes the existence of a deliberately planned conspiracy of a type which brings its case within the rule set forth in the case of *United Board & Carton Corporation v. Britting,* 63 *N.J.Super.* 517, 164 *A.2d* 824, affirmed 61 *N.J.Super.* 340, 160 *A.2d* 660. In the cited case .former employees charged with having not only dishonestly enticed away many of their employer's best customers but also with having purloined customers' dies for their own use prior to their coordinated resignations, by deposition ,and in the case of one defendant by testimony in open court frankly admitted plaintiff's charges. In other words, it appears that in the cited case no effort was made on the part of the defendants either to deny or to justify allegedly successful efforts to injure the business of their former employer.

The individual defendant Guyer and Spiller on the other hand have a rather different view of their 1957 activities than that drawn by plaintiff, although, of course, as in the case of *United Board & Carton Corporation v. Britting,* supra, they concede, as indeed they must, that while employed by plaintiff, they made plans to leave its employ. It is further quite clear that when arrangements for a competing business were virtually complete, they quit their jobs with plaintiff. While defendants do not discuss the cited case in their brief, they point to facts and circumstances, which, they contend, make

their actions typical of those found in the intensely competitive world of storm window makers rather than the type of competitive act which the law deems either unfair under principles of unfair competition or a direct or indirect violation of the law of agency. They stress factors in the case at bar which, they contend, made the obligation of plaintiff's former employees (as opposed to the lesser duty of the other defendants) at the most imperfect. And while they concede that a number of their actions were perhaps not handsome, they deny that the steps they took to set up a competing business are collectively or individually actionable. Not only Spiller and Guyer but also Mrs. Jane Erdman, who after some hesitation remained in plaintiff's employ, testified that months before firm arrangements were made for the launching of the business of the corporate defendant, both Spiller and Guyer had become disenchanted with Halko's personality and dissatisfied with his individualistic manner of handling plaintiff's business, a business firmly under Halko's direction even after his injuries of early 1957. And while both Spiller and Guyer held small amounts of stock in H. & S. Manufacturing Co., and both were in fact quasi officers and directors of such corporation, there is no doubt in my mind but that Halko, when on the job, was the person firmly in charge of all essential aspects of plaintiff's business. It is quite clear, however, that by the beginning of 1957 his conduct of the business was beginning to become gradually more and more distasteful to his key fellow employees. In other words, while association with Halko was not a new thing for Guyer and definitely not for Spiller, both had in the months preceding their departure from H. & S. come with reason to entertain grave concern about his present and future executive qualifications and so about their own future in the business. Halko himself conceded at trial that during the period in which Guyer and Spiller began to concoct their plans to organize their own business, he had apparently for the first time in his life taken to drinking spiritous liquors in substantial amounts, and it seems obvious that this apparently temporary habit served directly and indirectly to blunt his effectiveness as an executive. In addition, Guyer and Spiller had not received from plaintiff the financial rewards, particularly bonuses, which had been promised them as an inducement to enter the employ of H. & S. Manufacturing Co. Other considerations conducive to

job dissatisfaction on the part of Spiller and Guyer also entered into the picture, namely Halko's interest in stock car racing, an anomalous venture into the restaurant business, an odd expense account arrangement with a Mrs. Burnham, who was apparently not a pay-roll employee, and other alleged deviations on Halko's part from plaintiff's main corporate purpose and raison d'être, namely the making and selling of aluminum storm windows, screens and doors and the like.

But turning to specific contentions which plaintiff claims entitle it to damages, I am satisfied first of all that while both Guyer and Spiller on a number of occasions stated in the presence of their fellow employees that their company was not being properly run and would go under in the near future unless something were done about it, I have reached the conclusion that this sort of talk was not maliciously indulged in but grew out of reasonable personal fears of the speakers about their own security, such talk being motivated, in my opinion, by a genuine, personal concern about the effect of Halko's behaviour on the company's future and thus on the speakers' own.

I am also satisfied that very much the same sort of grievances were aired in the presence of a number of plaintiff's customers, the witness Reynolds having testified that he overheard comments made by one or more of the individual defendants which went beyond mere concern about plaintiff's future, such remarks being to the effect that plaintiff's current financial position was unstable. Furthermore, the witness Masten, an officer of I. D. Short Company of Milford, testified that he received a letter either in the fall of 1956 or in 1957, to the effect that plaintiff had discontinued downstate deliveries and that the reason probably given in the letter, which could not be found nor a copy produced, was that the corporation was in financial difficulties. Hurchalla, an independent supplier, who claimed to have seen such letter in the Short office, placed the date of the lost letter well into 1957. Accordingly, if the letter in question was in fact written by Spiller or Guyer, Hurchalla's testimony supports plaintiff's contentions on this point. However, as noted above, the letter itself was not produced, and assuming that the testimony adduced on this point is not violative of the best evidence rule, in my opinion this sort of remembrance carries little weight in making a fair evaluation of plain-

tiff's contentions, particularly if one accepts the date for the letter recalled by its recipient. Until a competing business became at least a possibility in the late summer of 1957 as a result of Chaiken's agreement to back such a project, it would hardly have been reasonable for either Spiller or Guyer thus directly to injure their present means of livelihood. Another dealer, Vancurca, added little or nothing in his testimony at trial to plaintiff's claims as to alleged actionable defamatory statements, and there is no sound basis for admitting his more detailed deposition into evidence.

A more reasonable estimate of what actually lies behind the charges and countercharges made in this case as to what Guyer and Spiller actually said and did prior to their precipitate departure from plaintiff's shop was that Halko by mid-1957 had become a constant source of worry to a number of his employees, and as inevitably happens in such a situation he was talked about. Guyer and Spiller were not men of means, and it was not, in my opinion, improper for them, when they came to feel that their future job security was in jeopardy, to complain volubly and to look about for a new means of livelihood, Halko obviously not being a man to be reasoned with or easily influenced. Having observed the demeanor of the principal adversaries in the affairs here in issue as they testified, and weighed their testimony against the background of the more dispassionate views of Mrs. Erdman, a keen observer of what was going on around her, I have come to the conclusion, as noted above, that Guyer's general garrulousness about Halko and plaintiff's possible future was not motivated by malice or vindictiveness, but was rather a manifestation of gloom about plaintiff's future. Furthermore, alleged efforts to persuade plaintiff's employees, who were not bound to plaintiff by contract and who had their own worries about the future, to leave and take employment with the corporate defendant in any event were not shown to have borne any tangible results for which damages might be awarded. Compare *Vincent Horwitz Co. v. Cooper*, 352 *Pa.* 7, 41 *A.2d* 870. The same is true concerning claims of alleged attempts to take away customers from plaintiff. Even the buyer, Meagher, who alone apparently did actually switch his orders from plaintiff to the corporate defendant, testified that he did so because the corporate defendant's product was superior.

In short, plaintiff's proof concerning alleged filching of its employees and customers rather reflects the general dissatisfaction in the trade concerning Halko's behaviour and an understandable effort on the part of certain of his employees to improve their lot and does not support plaintiff's claim that the individual defendants' talk was malicious and successfully destructive of plaintiff's interests. Finally, on this phase of the case, I find it impossible to believe that in the small enterprise in which Halko, Guyer and Spiller were engaged that Halko was completely oblivious of the unhappy state of mind of a number of his employees. By the same token, I am convinced that if Guyer had seriously neglected his work while he made plans to change jobs, Halko would have taken vigorous steps to correct such situation.

Passing to other contentions made by plaintiff, it is next submitted that the evidence supports a finding that Guyer, with the full or partial collaboration of Spiller, tortuously interfered with plaintiff's contractual arrangements not only with the Benada Division of Textron, Inc., but also with those for the purchase of supplies from Hunter-Douglas Corporation and Carey-McFall Company. The short answer to such contentions is that plaintiff failed to establish the existence of anything more than very tentative contractual arrangements with any of these corporations. To be sure, negotiations were pending to some degree with each of these suppliers during 1957, and in the case of Benada, Guyer, while on a visit to the Benada plant, instead of advancing plaintiff's alleged interests there, which he apparently knew little about, rather used the opportunity to secure a sample window for his own purposes. However, I find it impossible not to believe that if there had been any real interest on the part of Halko in any of such opportunities, he would have taken up negotiations personally. The point is that at no point did Halko, the corporate president, exert any effort to follow up the preliminary negotiations about which he testified at trial. If Halko, a patently dynamic personality in charge of a small shop operation, had seriously counted on securing supplies from any of the enumerated suppliers, I am certain that he would have handled matters himself, particularly the possibility of securing Benada as a supplier of low priced extruded aluminum, and that he would not have left this latter matter for casual

handling by Guyer while he was on a combined business and pleasure trip in Ohio.

Finally, plaintiff submits that the so-called release given to Spiller, whereby Spiller reciprocally acknowledged that while an officer of H. & S. he had illegally and disloyally combined with Guyer and Chaiken to organize and launch a similar business for the purpose of competing with plaintiff and was in turn relieved of liability, not only constitutes an admission of wrongdoing on the part of Spiller but also serves to implicate Guyer and Chaiken as co-conspirators liable to plaintiff. Neither Guyer nor Chaiken, however, had any knowledge of the existence of such a document or of earlier drafts thereof prior to its execution, and I fail to see how Spiller's willingness to sign a document which incriminated him and others can ipso facto serve to make such others legally responsible for the characterization of their business activities therein contained. It is quite apparent from a comparison of the language of the so-called release with the language of the original complaint that the former was obtained to provide support for the allegations of the latter, and while Spiller's tortured efforts to explain away his execution of the document are not to be believed, I decline under the circumstances to permit it to be used for the purpose of holding either Guyer or Chaiken liable for the acts therein recited. Were this a case in which defendants were standing trial on criminal charges, it would be for the jury to decide whether or not a state's witness, who had confessed to a crime and implicated those being tried, is to be believed. Here, I decline to believe what Spiller has stated in writing about his fellow workers. Whatever his thoughts may have been in signing such a document, its use against the other defendants will not be allowed.

In conclusion, I shall merely note that the results I have reached (after consideration of all the evidence properly before me) as to the lack of substance in plaintiff's case, make it unnecessary to consider the effect, if any, of plaintiff's failure to sue between the launching of the business of the corporate defendant in September, 1957 and the filing of a complaint in March, 1959.

There has also been no need to deal with plaintiff's objection to defendants' calling of witnesses whose names were allegedly not

properly given in response to interrogatories inasmuch as such persons' testimony was not considered in reaching the conclusion that plaintiff's grievances while palpable are not actionable in this Court.

On notice, an order may be presented dismissing the remaining portions of the complaint and entering judgment for defendants.

## ON MOTION FOR REARGUMENT

Plaintiff has moved for reargument on the grounds that the above opinion failed to rule on plaintiff's prayer that the defendant Guyer be required to account for and to pay over to plaintiff all salaries and disbursements to him for expenses received by him from plaintiff during that period when he was engaged in the furtherance of his own business interests.

Concededly, Guyer did participate in the making of plans for a competitive business while still employed by plaintiff, and there is no doubt but that such plans were discussed on plaintiff's premises. However, workings of the small corporations here involved are not complicated and what Guyer and Spiller were primarily working on in the summer of 1957, as far as the planning of the corporate defendant was concerned, was the obtaining of financial backing.

In fact, as pointed out in the above opinion, the evidence is such that "* * * I am convinced that if Guyer has seriously neglected his work while he made plans to change jobs, Halko would have taken vigorous steps to correct such situation."

An order may be submitted denying plaintiff's motion for reargument.