240 A.2d 411.

CHARLES L. CALLAHAN, JR. *d.b.a.* TOP LINE WAREHOUSE *vs.*
RHODE ISLAND OIL CO. *et al.*

APRIL 10, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.   This is a civil action brought to enjoin
the defendants' solicitation of the customers of plaintiff for
the sale of products of Quaker State Oil Refining Corpora-
tion, hereinafter referred to as Quaker State, and for an
accounting.   The cause was heard on its merits by a justice
of the superior court as to the defendants, Rhode Island
Oil Co., Robert Eder, and Arthur T. Anthony   Decision was
for these defendants, and judgment entered thereon. From
that judgment the plaintiff prosecuted an appeal to this
court.

The record discloses that during the pendency of this appeal Quaker State moved for severance and remand to the superior court of that portion of the issues relating to that defendant. This motion was granted, and those issues are now pending trial in superior court.

An examination of the record discloses no substantial dispute as to the material facts involved in this case. It appears that plaintiff, hereinafter referred to as Callahan, held a non-exclusive distributor agreement with Quaker State for distribution of its petroleum products to retail outlets. It further appears that defendant Anthony was first employed by Callahan in 1961 to act as a salesman servicing a number of Callahan's accounts. At that time, Anthony testified, Callahan provided him with a list of about 100 accounts to be serviced by him. Each year thereafter he succeeded in acquiring new accounts until, upon leaving Callahan in 1966, he was servicing approximately 250 such accounts.

In October 1966, Anthony told Callahan that he was leaving to take similar employment with Rhode Island Oil Co. Anthony concedes that after entering the employ of Rhode Island, he contacted about one half of the Callahan accounts and that he would have solicited more of these accounts if he had had the time. In other words, Anthony concedes that he had access to the list of Callahan's accounts and that he did, after going to work with Rhode Island, solicit a substantial portion of these accounts. There is also evidence in the record that all of the accounts on Callahan's list serviced by Anthony were operators of gasoline stations and other retail automotive dealers who sold the products they purchased from Callahan to the ultimate consumer and that none of Callahan's accounts was an ultimate consumer. There is further evidence that substantially most retail outlets for such products employ signs indicating that Quaker State's products are for sale therein.

Callahan contends that the information supplied Anthony concerning a list of his customers partakes of the same confidential nature as was attributed by this court to a list of laundry customers supplied employee drivers in *Colonial Laundries, Inc.* v. *Henry*, 48 R. I. 332, 138 Atl. 47. There we held that a route list of a portion of its laundry customers furnished employee drivers by an employing laundry at the beginning of their employment was confidential in nature and that the employer was entitled to enjoin the employees who, after termination of their employment, solicited the customers who comprised that list on behalf of their new business, a competing laundry.

The trial justice in the instant case, noting the extent of the rule set out in *Colonial Laundries,* found that the list of customers that Callahan furnished defendant Anthony was not confidential in nature. He rested this opinion on the fact that the persons who were listed thereon were all engaged in the business of distributing automotive petroleum products at retail and were easily identifiable as dealers in such products by the advertising displayed on their places of business as well as by an examination of the business listings in telephone directories and other similar directories. The trial justice concluded that Callahan, in effect, was seeking an extension of the rule laid down in *Colonial Laundries* to customer lists of a character different from the list protected in that case, and refused to restrain either Anthony or Rhode Island from further solicitation of such dealers in petroleum products who were customers of Callahan while Anthony was employed by him.

It may well be that the rule stated in *Colonial Laundries* was the rule in a minority of jurisdictions at one time. However, it is our opinion that it is now within the purview of a well-recognized exception to the general rule that absent

some form of agreement not to compete,[1] the courts will not enjoin the solicitation by a former employee of customers serviced by him when he was so employed. The rule which is now given general recognition and the exception thereto is aptly stated in *Carl A. Colteryahn Dairy, Inc.* v. *Schneider Dairy*, 415 Pa. 276, 280, 203 A.2d 469, 471:

> "Generally, in the absence of an express contract to the contrary, solicitation of a former employer's customers, on behalf of another in competition with his former employer, will not be enjoined. This rule has been recognized by numerous text writers and courts. However, even in the absence of such an express agreement, an employer is entitled to equitable protection against the competitive use of confidential and secret information obtained as a result of the trust and confidence of previous employment * * * ."

See also *Vendo Co.* v. *Long,* 213 Ga. 774, 102 S.E.2d 173; *Renpak, Inc.* v. *Oppenheimer,* Fla. App., 104 So.2d 642.

It would appear then that, *Colonial Laundries* involving, as it did, a customer list that had been entrusted to the former employees in confidence and within the exception to the general rule referred to above, the trial justice in the instant case did not err in refusing to grant relief by way of injunction to Callahan if the list under consideration was not acquired by Anthony in confidence. The question then is whether the trial justice was correct in finding that the information concerning customer lists which Callahan furnished Anthony was not within the exception to the general rule referred to above.

In our opinion, the list from which Anthony acquired information of Callahan's customers was properly found to be not confidential and, therefore, differs from the list to which this court extended protection in *Colonial Laundries.*

---

[1] For an interesting and exhaustive discussion of the equitable enforcement of such agreement in customer solicitation cases, see *Arthur Murray Dance Studios* v. *Witter,* 62 Ohio L. Abs. 17, 105 N.E.2d 685.

We think the distinction between these situations is made abundantly clear in *Town & Country House & Home Service, Inc.* v. *Newbery,* 3 N.Y.2d 554, 147 N.E.2d 724. There the court, considering whether injunctive relief should be afforded such a list where prior employees had solicited some 25 customers of the plaintiff, who operated a house-cleaning service, said, 3 N.Y.2d at 558, 147 N.E.2d 726:

"* * * The only trade secret which could be involved in this business is plaintiff's list of customers. Concerning that, even where a solicitor of business does not operate fraudulently under the banner of his former employer, he still may not solicit the latter's customers who are not openly engaged in business in advertised locations or whose availability as patrons cannot readily be ascertained but 'whose trade and patronage have been secured by years of business effort and advertising, and the expenditure of time and money, constituting a part of the good-will of a business which enterprise and foresight have built up' ***."

In short, it is our opinion that *Colonial Laundries* stands for the proposition that where information concerning a list of customers is confidential in nature and, therefore, partakes of the character of a trade secret, a former employer is entitled to equitable relief to protect that information against use by a former employee after the termination of his employment. Obviously such lists of customers who are available to take the particular service that is offered and who are not classified as likely customers in any public directory or discoverable by any public display of their willingness to purchase such goods or services can be assembled only by an expenditure of time, effort, and money. *Denawetz* v. *Milch,* 407 Pa. 115, 178 A.2d 701; *Town and Country House and Homes Service, Inc.* v. *Evans,* 150 Conn. 314, 189 A.2d 390; *American Alloy Steel Corp.* v. *Ross,* 149 Cal.App.2d 215, 308 P.2d 494.

However, as the court said in *Town and Country House and Homes Service, Inc.* v. *Evans, supra,* 150 Conn. at 320,

189 A.2d 394: "On the other hand, where the identity of the customers is readily ascertainable through ordinary business channels or through classified business or trade directories, the courts refuse to accord to the list the protection of a trade secret." In our opinion, the list under consideration here is one of customers whose identity was readily ascertainable and not confidential and the trial justice did not err in denying injunctive relief.

The appeal of the plaintiff is denied and dismissed, and the judgment appealed from is affirmed.

*Robert T. Flynn*, for plaintiff.

*Tillinghast, Collins & Tanner, Andrew A. DiPrete, Peter J. McGinn*, of counsel, for defendants.