## EASTERN CONTAINER CORPORATION

v.

## Herbert J. CRAINE, Jr., et al.

### No. 91–346–A.

Supreme Court of Rhode Island.

May 10, 1993.

Matthew T. Oliverio, Mark Freel, Edwards & Angell, Providence, for plaintiff.

James Purcell, Jeffrey Gladstone, Partridge, Snow & Hahn, Providence, for defendant.

### OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of the Superior Court enforcing by injunction a contractual covenant not to compete and continuing the case for a hearing on damages for the breach thereof. The facts as pertinent to this opinion are as follows.

The plaintiff, Eastern Container Corporation (plaintiff or Eastern Container), manufactures and distributes packaging materials: boxes, Styrofoam filler, and the like. The defendant Herbert J. Craine, Jr. (Craine), worked for plaintiff as a sales representative before leaving in 1991 to join codefendant Grimes Box Company (Grimes Box). Grimes Box, one of plaintiff's competitors, also manufactures and distributes packaging materials.

Before starting with plaintiff in 1985, Craine was required to sign an employment contract. This contract listed information that plaintiff considered confidential, including its customer lists, prices, and sources of supply. The contract also contained a covenant not to compete, which reads as follows:

"(c) The Employee agrees that in the event of his termination of employment, for any reason, and whether voluntary or involuntary, he shall not, for a period of five (5) years after the date of termination, and within a radius of three hundred (300) miles of the Company:

"1. Engage in any business whether as proprietor, owner, stockholder, principal, agent, director, officer, or employee (other than as sales representative) which is or may be directly or indirectly

in competition with the business of the Company.

\*    \*    \*    \*    \*    \*

"If Employee becomes a sales representative, he agrees that he will not solicit sales from, sell to, take orders from, or in any way directly or indirectly obtain sales from persons or businesses who are then customers of the Company or whom [sic] had been a customer of the Company at any time within twelve (12) months prior to the Employee entering his employment with the Company."

After working for plaintiff for several years, Craine began to consider leaving in November 1990. At that time Craine arranged a "fairly lengthy" meeting with Brian Grimes (Grimes) of Grimes Box to discuss the possibility of a position with that company. Craine took sick leave from January 5, 1991, until March 4, 1991, on which date he submitted his resignation. The following week, on March 11, 1991, Craine started with Grimes Box.

Thereafter Craine began to contact his former clients "as a professional courtesy" in order to alert them to his change of employer. Craine contended at trial that he did not intend to solicit these companies for Grimes Box. Craine admitted, however, that he did quote prices during these conversations.

One of these former customers was Ross–Simons Jewelers (Ross–Simons), a retail and mail-order jewelry concern. The Ross–Simons account was large, about $500,000 worth of business, and constituted a major portion of plaintiff's sales. On his own initiative Craine had solicited and developed this account for plaintiff. Craine became friendly with Ray Mucci (Mucci), Ross–Simons's purchaser for packaging products. The two would socialize regularly, often at plaintiff's expense. When Craine moved to Grimes Box, he went to see Mucci to tell him the news in person. About a week after the first meeting, Craine returned with Grimes to introduce him to Mucci. Again, Craine claimed that his intent was not to solicit Ross–Simons's business.

After this meeting Ross–Simons began purchasing boxes from Grimes Box. Furthermore Ross–Simons stopped purchasing boxes from plaintiff. In his deposition, which was made part of the record, Mucci claimed to have made the decision to stop buying from Eastern Container sometime in January or February, before Craine left plaintiff's employ, because of problems that Ross–Simons had experienced with Eastern Container's service.

The plaintiff claimed, however, that Mucci moved Ross–Simons's business to Grimes Box because of Craine's solicitation. On April 12, 1991, plaintiff filed in Superior Court a complaint, which was subsequently amended, charging Craine with breach of contract and charging Grimes Box with intentional interference with contractual relations. After hearing testimony and argument from both sides, the trial justice on June 28, 1991, issued an injunction enjoining Craine from soliciting sales from, taking orders from, or in any way attempting, directly or indirectly, to obtain sales from any of plaintiff's customers for a period of one year beginning March 4, 1991. The trial justice further enjoined Craine from divulging any of plaintiff's confidential information for the same period and, most importantly for this appeal, enjoined Grimes Box from doing business with Ross–Simons from June 20, 1991, until March 6, 1993. In addition, the trial justice held that plaintiff was entitled to damages for "direct and proximate losses sustained by the plaintiff for a period of one (1) year as a result of the loss of business from Ross–Simons." The hearing on damages was continued to a later unspecified date. The defendants filed a timely notice of appeal on July 1, 1991.

The defendants make several arguments in support of their appeal. The restrictive covenant, defendants contend, is unenforceable because plaintiff has no legitimate interest to protect and because Craine entered into the employment contract under duress. Moreover, defendants argue, the restrictive covenant is unreasonable because it is greater in scope than necessary and imposes an undue hardship on Craine. The defendants further argue that there

was no causal connection between plaintiff's loss of the Ross–Simons business and their actions and that the acquisition of the Ross–Simons business by Grimes Box was not a result of a violation of the covenant not to compete.

■ In response to these arguments we note that the time for the restrictive injunction placed by the trial justice expired by its own terms on March 6, 1993. The question of whether the injunction should have been issued in the first place is therefore moot, because there is no relief this court could grant.

■ As far as the award of damages is concerned, the plaintiff is not necessarily entitled both to an injunction and to damages. "It does not follow as a matter of course that in addition to an injunction a winning plaintiff in every case of unfair competition is entitled to a monetary award in the form of damages or an accounting of profits. * * * The character of the conduct giving rise to the unfair competition is relevant to the remedy which should be awarded." *Bostitch, Inc. v. King Fastener Co.,* 87 R.I. 274, 291, 140 A.2d 274, 284 (1958) (quoting *Radio Shack Corp. v. Radio Shack, Inc.,* 180 F.2d 200, 207 (7th Cir.1950)). We recognize that on prior occasions we have affirmed judgments of the Superior Court that awarded both injunctive relief and an award of damages. *See Abbey Medical/Abbey Rents, Inc. v. Mignacca,* 471 A.2d 189 (R.I.1984); *Rego Displays, Inc. v. Fournier,* 119 R.I. 469, 379 A.2d 1098 (1977). An examination of the facts in those cases would indicate that the conduct of the defendants was in each case more egregious than that of the defendants in the case at bar. The character of the information utilized by the defendants in those cases was more confidential than were the identities of the customers of Eastern Container. Consequently we are of the opinion that the granting of the injunction by the trial justice was an adequate remedy to respond to the merits of this controversy. Considering the nature and the extent of the defendants' conduct in this case, we conclude that the injunction amply served any interest deserving protection to which the plaintiff was entitled and that to add damages to the relief granted would impose too onerous a burden on the defendants.

For the reasons stated, the defendants' appeal is sustained in part and denied in part. The judgment of the Superior Court is affirmed pro forma in regard to the injunction but vacated in regard to the scheduling of a hearing on damages, and the papers in the case are remanded for entry of final judgment consistent with this opinion.