CASCO INDEMNITY COMPANY

v.

Kevin O'CONNOR.

No. 99-35-Appeal.

Supreme Court of Rhode Island.

July 6, 2000.

Mark T. Reynolds, John G. Rallis, Providence, for Plaintiff.

James Donelan, John J. Flynn, Warwick, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on appeal from a declaratory judgment that an arbitrator's determination of liability for an automobile accident would bind a second arbitrator considering a related uninsured motorist claim. The insured driver, Kevin O'Connor (O'Connor) argued that it was inappropriate for the first arbitrator's decision to have a preclusive effect in the second arbitration because the insurance company that defended O'Connor in the first arbitration was the subject of the uninsured motorist claim in the second arbitration. Because we agree that the attorney hired by the insurance company in the first arbitration did not fulfill her professional and ethical responsibilities in carrying out her representation of O'Connor, we sustain the appeal.

### Facts and Procedural History

The facts of the case are essentially undisputed. On October 3, 1992, a two-car collision occurred in Cranston, Rhode Island. Melissa Defelice (Defelice) was the operator of one vehicle, and O'Connor operated the second vehicle, in which the owner, Carol Interlini (Interlini)[1], was a passenger. At the time of the accident, Interlini was insured by Casco Indemnity Company (Casco), and O'Connor was considered an additional insured under the policy. Defelice filed a civil action (PC 92–6369) against O'Connor and Interlini seeking damages for personal injuries suffered in the accident. Pursuant to the terms of Interlini's policy, Casco hired an attorney, whom we shall refer to as defense counsel, to represent O'Connor and Interlini. Defense counsel also filed a counterclaim on behalf of Interlini against Defelice, seeking reimbursement for money Casco had paid to repair Interlini's automobile.

While Defelice's suit was proceeding, O'Connor and Interlini each filed written claims for personal injuries against Casco, pursuant to the uninsured motorist provision of the policy.[2] O'Connor and Interlini were represented in these claims by their

---

1. After the accident, O'Connor and Interlini were married, but to avoid confusion, we shall refer to Interlini using her name at the time of the accident.

2. At the time of the 1992 accident, Defelice was uninsured.

own attorney, James Donelan (Donelan), who sent a letter of representation to Casco on October 9, 1992.

While O'Connor's and Interlini's claims against Casco were still pending, Defelice and defense counsel agreed to submit Defelice's claim and Casco's counterclaim to court-annexed arbitration. The arbitration hearing was held on July 26, 1994. Donelan had been informed of the arbitration but did not attend or participate in the arbitration. On August 24, 1994, the arbitrator released a written decision in which he determined that Defelice and O'Connor were each negligent and each 50 percent liable for the accident. The arbitrator awarded damages to Defelice for personal injuries and to Casco for property damage to Interlini's automobile. Although defense counsel orally informed O'Connor of the results of the arbitration, neither O'Connor nor Donelan was given a copy of the award, and neither O'Connor nor Interlini was informed that there was a twenty-day period during which any party could reject the award. Defense counsel testified that after the award was rendered, she consulted with a Casco claims adjuster and decided not to reject the award. Further, neither O'Connor nor Interlini was told that the arbitrator's decision could or would have an impact on their own uninsured motorist claims against Casco. No party rejected the award, and it was entered as a judgment in the Superior Court on September 20, 1994.

In February 1996, O'Connor made an offer of settlement to Casco on the uninsured motorist claim. The parties were unable to reach agreement in settlement discussions, and on September 18, 1996, Casco made a demand for arbitration pursuant to the insurance policy.

On June 27, 1997, Casco filed a complaint for declaratory judgment in the Superior Court, seeking a judgment declaring that the arbitrator's finding with respect to O'Connor's liability for the ac-

cident would be binding in the arbitration on his uninsured motorist claim. A hearing was held on April 1, 1998, at which testimony was taken from O'Connor, Interlini, and defense counsel. On December 18, 1998, the trial justice issued a decision from the bench in which he determined that the doctrine of collateral estoppel was applicable to the case at bar and that the first arbitrator's finding concerning O'Connor's liability would be binding on the second arbitrator. Judgment was entered on January 4, 1999,[3] and O'Connor filed a notice of appeal on January 5, 1999.

On appeal, O'Connor argued that collateral estoppel should not apply between an insured and his or her insurer when the insured is defended by the insurer in one action but then the insured brings a claim against the insurer in a second action. O'Connor asserted that collateral estoppel is inapplicable in such a situation for several reasons, including a conflict of interest between the parties, a lack of a previous adversarial relationship between the parties, and the insured's lack of both an incentive and a full and fair opportunity to defend the first action. O'Connor also claimed that collateral estoppel should not apply because the issue of O'Connor's claim against Casco was not decided in the first arbitration. Casco, on the other hand, argued that all the elements of collateral estoppel were present in the instant case, and therefore the trial justice did not err in applying the doctrine.

Additional facts will be discussed as required in the legal analysis of the issues raised.

## Standard of Review

The issuance of declaratory judgments by courts in Rhode Island is controlled by statute, the Uniform Declaratory Judgments Act. G.L.1956 chapter 30 of title 9. In that statute, the Legislature determined that "[a]ll orders, judgments, and

3. The judgment is actually dated January 4, 1998, clearly a typographical error.

decrees under this chapter may be reviewed as other orders, judgments, and decrees." Section 9–30–7. Thus, a declaratory judgment and the underlying findings of fact and findings of law must be reviewed as any other judgment when it is before this Court on appeal.

■ In issuing a declaratory judgment, a trial judge makes all findings of fact without a jury. It is well-established that "the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Technology Investors v. Town of Westerly*, 689 A.2d 1060, 1062 (R.I.1997) (citing *Rego Displays, Inc. v. Fournier*, 119 R.I. 469, 472–73, 379 A.2d 1098, 1100–01 (1977)). Further, the "resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence, are entitled to the same deference." *Wickes Asset Management, Inc. v. Dupuis*, 679 A.2d 314, 317 (R.I.1996) (quoting *Warwick Musical Theatre, Inc. v. State*, 525 A.2d 905, 909–10 (R.I.1987)). A trial justice's findings on questions of law, however, are reviewed *de novo* by this Court. *Palazzolo v. State*, 746 A.2d 707, 711 (R.I. 2000), *petition for cert. filed* (U.S. June 21, 2000) (No. 99–2047). The determination of whether collateral estoppel should be applied presents a question of law, *Mulholland Construction Co. v. Lee Pare & Associates, Inc.*, 576 A.2d 1236, 1237 (R.I.1990), and therefore we shall review this issue *de novo*.

### Collateral Estoppel

■ The sole issue decided by the trial justice in this declaratory judgment action was whether the first arbitrator's determination that O'Connor was 50 percent liable for the accident should be binding in the second arbitration. That is to say, should O'Connor be collaterally estopped from denying his previously determined 50 percent liability in this subsequent action on his uninsured motorist claim against Casco? Under the doctrine of collateral estoppel, "an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings." *Commercial Union Insurance Co. v. Pelchat*, 727 A.2d 676, 680 (R.I.1999) (citing *Mulholland Construction Co.*, 576 A.2d at 1238). In order for collateral estoppel to apply, three factors must be present: "there must be an identity of issues; the prior proceeding must have resulted in a final judgment on the merits; and the party against whom collateral estoppel is sought must be the same as or in privity with the party in the prior proceeding." *Commercial Union Insurance Co.*, 727 A.2d at 680 (quoting *State v. Chase*, 588 A.2d 120, 122 (R.I.1991)). We have previously held that when an arbitration award is reduced to a final judgment in the Superior Court, the doctrine of collateral estoppel may be invoked in a subsequent proceeding. *Mulholland Construction Co.*, 576 A.2d at 1237–38.

■ Although the legal standard governing collateral estoppel is clear, "it is not to be mechanically applied, for it is capable of producing extraordinarily harsh and unfair results." *Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir.1995). To avoid unfairness, courts have declined to apply collateral estoppel in situations in which the doctrine would lead to an inequitable result. *See, e.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330, 99 S.Ct. 645, 651, 58 L.Ed.2d 552, 561 (1979) (noting that it would be unfair to apply collateral estoppel "[i]f a defendant in the first action is sued for small or nominal damages, [because] he may have little incentive to defend vigorously, particularly if future suits are not foreseeable"). Of particular importance to the case at bar is the principle that "collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier

case." *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 313 (1980).

■ In granting a declaratory judgment in favor of Casco, the trial justice decided that all the factors necessary for collateral estoppel were present and that none of the various exceptions raised by O'Connor was applicable to this case. This determination was based on his finding that there was "no sustainable claim that [defense counsel] representing Mr. O'Connor during the course of the arbitration proceeding and litigation in that case acted other than in a highly professional manner." On that basis, the trial justice found that O'Connor received a full and fair opportunity to litigate the issue of his liability for the accident and that O'Connor should be estopped from disputing that issue in the second arbitration proceeding. The finding that defense counsel acted in a highly professional manner and did not violate her ethical duties to O'Connor is a mixed question of law and fact, to which this Court grants great deference. *Wickes Asset Management, Inc.,* 679 A.2d at 317. After reviewing the evidence concerning the attorney's conduct, however, it is our opinion that the trial justice was clearly erroneous in finding that the attorney acted in a professional manner. Therefore, we must also reject the trial justice's conclusion that the issue of O'Connor's liability was fully and fairly litigated in Defelice's suit.

It is undisputed that defense counsel did not provide O'Connor with a copy of the arbitrator's award in which O'Connor was held to be 50 percent liable for the accident. The trial justice further found that there was no evidence that Donelan was provided with a copy of that award or even informed that the award had been rendered, even though defense counsel knew that Donelan was representing O'Connor in his uninsured motorist claim against Casco. Defense counsel never informed O'Connor that he had a right to reject the arbitration award. Instead, she consulted exclusively with Casco's claims adjuster to determine whether the award should be accepted.

Although defense counsel was hired and paid by Casco, O'Connor was her client, and she owed him unswerving loyalty during the course of her representation. *See* Commentary to Article V, Rule 1.7 of the Supreme Court Rules of Professional Conduct ("[a] lawyer may be paid from a source other than the client, if * * * the arrangement does not compromise the lawyer's duty of loyalty to the client"). In particular, under Rule 1.4(b) of the Rules of Professional Conduct, she was obliged to "keep [O'Connor] reasonably informed about the status of [his] matter." Thus, defense counsel should have provided O'Connor with a copy of the arbitrator's award when it was rendered. Further, Rule 5(a) of the Superior Court Arbitration Rules provides that a "party * * * who is dissatisfied with an arbitrator's award may have a trial as of right upon filing a written rejection of the award * * * within 20 days after the arbitrator's award has been filed." O'Connor and Interlini were the parties represented by defense counsel, who should have consulted them to determine whether the arbitrator's award should be rejected or accepted. Even if defense counsel reasonably believed that it was beyond the scope of her engagement to inform O'Connor of the possible preclusive effect that the arbitrator's award might have on his uninsured motorist claim, she should have advised him to consult with Donelan before deciding whether to accept or reject the award. *Cf. DiLuglio v. Providence Auto Body, Inc.,* 755 A.2d 757, 769–72 (R.I.2000) (discussing an attorney's obligation to disclose potential conflicts of interest).

Defense counsel's failure to inform or consult O'Connor concerning the arbitrator's award denied O'Connor the opportunity to have the issue of his negligence fully litigated. Had O'Connor been given a copy of the arbitrator's award and had

he been advised to discuss that award with his own attorney, he might have exercised his right to timely reject the arbitrator's award and insist that Defelice's suit be tried. At trial, the findings concerning the relative liability of the parties might have been substantially different. Because O'Connor was denied the opportunity to reject the arbitrator's award, the trial justice erred when he determined that the issue of O'Connor's liability had been fully and fairly litigated in the first proceeding.

We are not prepared to hold that collateral estoppel should never apply between an insured and an insurer when the insured is defended by the insurer in one action but then the insured brings a claim against the insurer in a second action. It is clear in this case, however, that it would be inequitable to permit Casco to benefit from the unprofessional conduct of the attorney whom it hired to represent O'Connor. Therefore, the application of collateral estoppel under these circumstances was error.

### Conclusion

The actions of the attorney hired by Casco denied O'Connor the opportunity to fully and fairly litigate the issue of his liability for the automobile accident. It was thus inequitable to apply the doctrine of collateral estoppel to the findings of the first arbitrator to the proceedings in a second arbitration. For the foregoing reasons, the appeal is sustained, and the declaratory judgment is vacated. The case is remanded to the Superior Court with instructions to dismiss Casco's complaint for declaratory judgment.