OPINION
{¶ 1} Defendant-appellant, Robert E. Martin, appeals from a judgment of the Franklin County Court of Common Pleas adopting a magistrate's decision that granted damages to plaintiff-appellee, Al Minor Associates, Inc. ("AMA"), on AMA's claim that defendant misappropriated trade secrets from AMA. Defendant assigns a single error:
THE TRIAL COURT ERRONEOUSLY DENIED THE APPELLANT'S OBJECTIONS TO THE MAGISTRATE'S REPORT HOLDING THAT APPELLANT'S USE OF MEMORIZED CLIENT INFORMATION CONSTITUTED A MISAPPROPRIATION OF TRADE SECRETS.
Because AMA's client information is a trade secret under R.C. 1331.61(D), we affirm.
 {¶ 2} AMA is an actuarial firm that serves as a third-party administrator of qualified retirement plans and assists businesses in creating, developing and managing qualified retirement plans, including ERISA plans. Albert R. Minor, Jr. is AMA's president and sole shareholder. AMA employed defendant from 1998 through 2003 as a pension analyst, assigning him to particular clients that qualified as defined contribution plans. Defendant did not sign an employment agreement, a covenant not to compete, or a written agreement concerning AMA's trade secrets.
 {¶ 3} Prior to resigning from AMA, defendant formed his own company in the same line of business. Defendant left AMA without a client list or any other physical document, but retained his knowledge of AMA's clients and their respective plans. Shortly after leaving, defendant solicited and secured 15 clients that AMA formerly serviced.
 {¶ 4} AMA filed a complaint against defendant for misappropriation of trade secrets in violation of R.C. 1331.61 et seq., when it became aware that some of the clients defendant was servicing were former AMA clients. Specifically, AMA contended defendant misappropriated both AMA's confidential client list and its confidential information concerning the administrative service needs of its clients' third-party pension plans. AMA sought monetary and injunctive relief.
 {¶ 5} Defendant filed an answer, and the case was referred to a magistrate for trial. On January 12, 2005, the magistrate found defendant liable to AMA for misappropriation of trade secrets and awarded AMA $25,973 in damages. Because AMA withdrew its request for a preliminary injunction and failed to address the continuing need for injunctive relief, the magistrate dismissed AMA's request for injunctive relief.
 {¶ 6} Both AMA and defendant filed objections to the magistrate's conclusions of law pursuant to Civ.R. 53(E)(3); neither party contested the magistrate's findings of fact. Defendant contended the magistrate's decision was erroneous because AMA's client list and information were not trade secrets; AMA objected to the magistrate's calculation of damages. The trial court overruled both defendant's and AMA's objections and pursuant to Civ.R. 53(E)(4), approved and adopted the magistrate's decision in its entirety.
 {¶ 7} Defendant's sole assignment of error contends the trial court erred in determining that AMA's client list and information are trade secrets. R.C. 1333.61(D) defines trade secret to mean "information, including the whole or any portion or phase of * * * any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use[;] (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."
 {¶ 8} The Supreme Court of Ohio adopted six factors to consider in analyzing a trade secret claim: "(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e.
by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information." State ex. rel. The PlainDealer v. Ohio Dept. of Ins. (1997), 80 Ohio St.3d 513, 524-525, citing Pyromatics, Inc. v. Petruziello (1983),7 Ohio App.3d 131, 134-135.
 {¶ 9} Here, the trial court determined AMA's client list was an intangible asset that AMA acquired by devoting considerable time and resources over a 20-year period. The trial court also concluded AMA took sufficient precautionary measures to assure the client list remained confidential, including: (1) informing its employees that its client information was confidential and was not to be made public; (2) circulating a Computer Usage Policy that reminded its employees the client names and associated information were confidential, were not to be made public, and were not to be removed from the confines of the office; and (3) securing client information from those entering AMA's office. Premised on those findings, the trial court determined AMA's client list and information were trade secrets under R.C. 1331.61.
 {¶ 10} Defendant first argues AMA's client list and information are not trade secrets because that information is available to the general public on the internet website www.freeERISA.com. In support, defendant points to the magistrate's finding of facts to support his contention: AMA "agreed with the general assumption that each of the 15 aforementioned clients could be entered into the database and the corresponding [client information] could then be accessed through the `view it' link." (Magistrate's Decision, 9.) Defendant concludes that because the undisputed evidence proves the public may readily access AMA's client list and information, they are not entitled to trade secret status.
 {¶ 11} A customer list is an intangible asset that is presumptively a trade secret when the owner of the list takes measures to prevent its disclosure in the ordinary course of business to persons other than those the owner selects. State exrel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental ProtectionAgency (2000), 88 Ohio St.3d 166, 173; Vanguard Transp. Sys.,Inc. v. Edwards Transfer Storage Co., Gen. Commodities Div.
(1996), 109 Ohio App.3d 786. A customer list, however, is entitled to trade secret status "only if the information is not generally known or readily ascertainable to the public." OhioEnvironmental Protection Agency, at 173, quoting State ex. rel.The Plain Dealer, at 529.
 {¶ 12} Here, the trial court, through its magistrate, found that although a browser could enter an individual client's name into www.freeERISA.com and obtain the client's contact information, a browser could neither independently obtain a compiled list of the clients AMA serviced nor determine which clients needed third-party pension plan administrative services. The trial court analogized defendant's method of searching the website to searching a telephone directory for a client list: "the mere fact that each of the clients at issue are [sic] listed in a telephone directory, or can be entered by name in a database, does not raise an inference that they are `easily ascertainable.'" The court determined that because AMA's client list represented divergent trades, industries and businesses, any attempts to independently acquire AMA's client list from a database search would be exceedingly difficult and therefore not readily ascertainable to the public.
 {¶ 13} The evidence demonstrates AMA spent considerable time and energy compiling its client list and used adequate measures to protect the client information from its competitors. Because the evidence reflects no readily available means by which someone outside the employ of AMA can specifically identify AMA's clients and readily determine which clients need third-party pension plan administrative services, AMA's client list is a trade secret under R.C. 1331.61(D). Defendant's first argument is without merit.
 {¶ 14} Defendant next argues AMA's client list and information are not trade secrets because defendant acquired the list from memory. Defendant notes undisputed evidence that he did not take any physical information relating to AMA or its clients prior or subsequent to his resignation. Defendant cites two Eighth District Court of Appeals cases for the proposition that customer lists a former employee compiles strictly from memory are not trade secrets. Ellison Assoc. v. Pkarek (Sept. 26, 1985), Cuyahoga App. No. 49560; Michael Shore Co. v.Greenwald (Mar. 21, 1985), Cuyahoga App. No. 48824. The trial court resolved defendant's argument in favor of AMA, relying on this court's opinion in Mesarvey, Russell Co. v. Boyer (July 30, 1992), Franklin App. No. 91AP-974. In Boyer, we stated that "[w]hether created from a writing or from memory, a client list is a statutory trade secret under R.C. 1333.51(A)(3)."
 {¶ 15} Defendant claims Boyer does not apply here for two reasons: (1) because R.C. 1331.51(A)(3) was repealed and replaced with R.C. 1331.61(D), and (2) because the employee in Boyer,
unlike defendant, signed an employment contract with a non-compete clause. R.C. 1331.61(D) changed the definition of a trade secret from that contained in former R.C. 1333.51(A)(3). The change, however, has no bearing on the relevant aspect ofBoyer's holding because Boyer focused on the trade secret's form, not its definition. Similarly, the non-compete clause was apposite to the relevant aspect of Boyer's holding because the court narrowly and separately addressed the issue of the trade secret's form from the larger issue of breach of contract. Because Boyer is indistinguishable, and because we previously determined that a client list such as the one at issue fits the statutory definition of a trade secret under R.C. 1331.61(D), AMA's memorized client list warrants trade secret status.
 {¶ 16} Defendant finally contends that prohibiting him from contacting AMA's clients effectively creates a perpetual non-compete agreement against public policy. Defendant is correct insofar as he notes that R.C. 1331.61(D) expanded the definition of trade secret from the former statute and increased the tension between a company's right to be protected against unfair competition and an individual's right to the unhampered pursuit of livelihood. Defendant's argument, however, ignores the constantly changing nature of business information and the relatively short period of time during which such information can be deemed sufficiently relevant to warrant trade secret status. Even so, we need not resolve the interplay of the two competing interests. Because AMA withdrew its request for a preliminary injunction early in litigation and failed to address at trial the continuing need for injunctive relief, the trial court's judgment does not enjoin defendant from contacting AMA clients in the future but only requires defendant to compensate AMA for past monetary damages. Accordingly, defendant's policy argument is unpersuasive in addressing the merits of the appeal before us.
 {¶ 17} Having found defendant's arguments without merit, we overrule defendant's single assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Brown and French, JJ., concur.