AL MINOR & ASSOCIATES, INC., APPELLEE *v.* MARTIN, APPELLANT.

[Cite as *Al Minor & Assoc., Inc. v. Martin,*
117 Ohio St.3d 58, 2008-Ohio-292.]

(Nos. 2006–2340 and 2007–0121—Submitted November
6, 2007—Decided February 6, 2008.)

———————

———————

O'DONNELL, J.

{¶ 1} Robert E. Martin, a former employee of Al Minor & Associates, Inc. ("AMA"), appeals from a decision of the Franklin County Court of Appeals that affirmed a trial court judgment that denied equitable relief but entered a $25,973 verdict in favor of AMA for fees not generated from former clients Martin had solicited using information he had memorized while working for AMA. The court of appeals also certified that its decision conflicted with the decision in *Michael Shore & Co. v. Greenwald* (Mar. 21, 1985), Cuyahoga App. No. 48824, 1985 WL 17713, on the following question of law: "Whether customer lists compiled by former employees strictly from memory can be the basis for a statutory trade secret violation."

{¶ 2} Thus, the issue here concerns whether the use of a memorized client list can be the basis of a trade secret violation pursuant to Ohio's Uniform Trade Secrets Act ("UTSA"), R.C. 1333.61 et seq. After review, we have concluded that the client information at issue in this case did not lose its status as a trade secret, or the protection of the UTSA, because it had been memorized by a former employee.

{¶ 3} AMA is an actuarial firm that designs and administers retirement plans and that employs several "pension analysts" who work with approximately 500 clients. Al Minor Jr., who founded AMA in 1983 and serves as its president and sole shareholder, developed AMA's clientele, for which the firm maintains a confidential list.

{¶ 4} In 1998, AMA hired Martin as a pension analyst but did not require him to sign either an employment contract or a noncompetition agreement. In 2002, while still employed by AMA, Martin organized his own company, Martin Consultants, L.L.C., with the purpose of providing the same type of services as AMA. In 2003, he resigned from AMA and, without taking any documents containing confidential client information, successfully solicited 15 AMA clients with information from his memory.

{¶ 5} After learning of Martin's competing business, AMA filed the instant action against him for monetary and injunctive relief, claiming that he had violated Ohio's Trade Secrets Act by using confidential client information to solicit those clients. The trial court referred the trial to a magistrate, who determined that Martin had misappropriated AMA's client list in violation of the UTSA. In addition, the magistrate specifically concluded that the fact that Martin had solicited AMA's clients from memory did not prevent the finding of a trade secret violation. The magistrate further recommended finding against Martin for $25,973 in fees that AMA would have earned from its former clients and denying injunctive relief. Martin filed objections, but the court overruled them, adopted the magistrate's findings and recommendations, and entered judgment in favor of AMA.

{¶ 6} Martin appealed to the Franklin County Court of Appeals, arguing that a memorized client list does not satisfy the definition of a trade secret, a contention disputed by AMA. The court of appeals affirmed the trial court, stating that because "a client list such as the one at issue fits the statutory definition of a trade secret under R.C. 1333.61(D), AMA's memorized client list warrants trade secret status." *Al Minor & Assoc., Inc. v. Martin,* Franklin App. No. 06AP–217, 2006-Ohio-5948, 2006 WL 3240654, ¶ 15. The appellate court also certified its decision as being in conflict with *Greenwald,* Cuyahoga App. No. 48824, 1985 WL 17713. Martin filed a discretionary appeal, and we accepted the conflict and agreed to review his appeal.

{¶ 7} In this court, Martin asserts that a client list memorized by a former employee cannot be the basis of a trade secret violation and that the appellate court's decision in this case overly restricts his right to compete in business against AMA. He also argues that AMA should not have the right to control the use of his memory and that AMA had the opportunity to protect its confidential information by way of an employment contract, which it did not do.

{¶ 8} AMA counters that public policy in Ohio favors the protection of trade secrets, whether written or memorized; that the definition of a trade secret should focus on the nature of the information and the potential harm that its use would cause the former employer; and that no meaningful difference exists between a written and memorized client list.

{¶ 9} We note that Martin has also briefed a second proposition of law asserting that AMA's client list does not satisfy the definition of a trade secret because it contained information that is available to the public via the Internet. However, because Martin never raised this issue in his memorandum in support of jurisdiction, we never agreed to consider it. Thus, we concern ourselves only with the proposition of law that we accepted for review: whether a memorized client list can be the basis of a trade secret violation in Ohio pursuant to the UTSA.

{¶ 10} Ohio's protection of trade secrets arose at common law. In one of the earliest appellate decisions concerning trade secrets, *Natl. Tube Co. v. E. Tube Co.* (1902), 3 Ohio C.C. (N.S.) 459, 1902 WL 874, affirmed without opinion (1903), 69 Ohio St. 560, 70 N.E. 1127, an Ohio circuit court defined a trade secret as "a plan or process, tool, mechanism, or compound, known only to its owner and those of his employees to whom it is necessary to confide it, in order to apply it to the uses for which it is intended." Id. at 462, 1902 WL 874. In 1937, this court acknowledged that "[t]he authorities are quite uniform that disclosures of trade secrets by an employee secured by him in the course of confidential employment will be restrained by the process of injunction, and in numerous instances attempts to use for himself or for a new employer information relative to the

trade or business in which he had been engaged, such as lists of customers regarded as confidential, have been restrained." *Curry v. Marquart* (1937), 133 Ohio St. 77, 79, 10 O.O. 93, 11 N.E.2d 868.

{¶ 11} Moreover, as the United States Supreme Court noted in its 1974 decision in *Kewanee Oil Co. v. Bicron Corp.*, "Ohio has adopted the widely relied-upon definition of a trade secret found at Restatement of Torts § 757, comment b (1939)." 416 U.S. 470, 474, 94 S.Ct. 1879, 40 L.Ed.2d 315, citing *B.F. Goodrich Co. v. Wohlgemuth* (1963), 117 Ohio App. 493, 498, 24 O.O.2d 290, 192 N.E.2d 99, and *W.R. Grace & Co. v. Hargadine* (C.A.6, 1968), 17 Ohio Misc. 199, 392 F.2d 9, 14. The General Assembly also codified the Restatement definition of a trade secret at former R.C. 1333.51(A)(3), although it has since repealed that statute. See *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.* (1986), 24 Ohio St.3d 41, 44, 24 OBR 83, 492 N.E.2d 814; and *State ex rel. The Plain Dealer v. Ohio Dept. of Ins.* (1997), 80 Ohio St.3d 513, 524, 687 N.E.2d 661.

{¶ 12} In 1994, the General Assembly enacted the UTSA, R.C. 1333.61 through 1333.69, which defines a "trade secret" as follows:

{¶ 13} "[I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

{¶ 14} "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

{¶ 15} "(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." R.C. 1333.61(D).

{¶ 16} Furthermore, in *Plain Dealer*, 80 Ohio St.3d at 524–525, 687 N.E.2d 661, we established a six-factor test for determining whether information constitutes a trade secret pursuant to R.C. 1333.61(D): "(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information." Id., citing *Pyromatics, Inc. v. Petruziello* (1983), 7 Ohio App.3d 131, 134–135, 7 OBR 165, 454 N.E.2d 588.

{¶ 17} Neither R.C. 1333.61(D) nor any other provision of the UTSA suggests that for purposes of trade secret protection, the General Assembly intended to

distinguish between information that has been reduced to some tangible form and information that has been memorized. R.C. 1333.61(D) refers only to "information," including "any business information or plans, financial information, or listing of names, addresses, or telephone numbers," and the statute makes no mention of writings or other physical forms that such information might take. Furthermore, nothing in our six-factor test adopted in *Plain Dealer*, 80 Ohio St.3d at 524–525, 687 N.E.2d 661, indicates that the determination whether a client list constitutes a trade secret depends on whether it was capable of being memorized or had been memorized.

{¶ 18} The legislature, when enacting R.C. 1333.61(D), could have excluded memorized information from the definition of trade secret or added a requirement that such information be reproduced in physical form in order to constitute a trade secret. But it did not, and we are not in a position to read such language into the statute. See, e.g., *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52, wherein we stated that "[a]n unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language, and a court cannot simply ignore or add words"; see also *Iddings v. Jefferson Cty. School Dist. Bd. of Edn.* (1951), 155 Ohio St. 287, 290, 44 O.O. 294, 98 N.E.2d 827, which emphasized that "[t]o construe or interpret what is already plain is not interpretation but legislation, which is not the function of the courts."

{¶ 19} In addition, more than 40 other states have adopted the Uniform Trade Secrets Act in substantially similar form, and the majority position is that memorized information can be the basis for a trade secret violation. See, e.g., *Ed Nowogroski Ins., Inc. v. Rucker* (1999), 137 Wash.2d 427, 971 P.2d 936; *Morlife, Inc. v. Perry* (1997), 56 Cal.App.4th 1514, 66 Cal.Rptr.2d 731; *Allen v. Johar, Inc.* (1992), 308 Ark. 45, 823 S.W.2d 824; *Jet Spray Cooler, Inc. v. Crampton* (1972), 361 Mass. 835, 282 N.E.2d 921; *Van Prods. Co. v. Gen. Welding & Fabricating Co.* (1965), 419 Pa. 248, 213 A.2d 769; *M.N. Dannenbaum, Inc. v. Brummerhop* (Tex.App.1992), 840 S.W.2d 624; *Schulenburg v. Signatrol, Inc.* (1965), 33 Ill.2d 379, 212 N.E.2d 865; *Morgan's Home Equip. Corp. v. Martucci* (1957), 390 Pa. 618, 136 A.2d 838; *Cent. Plastics Co. v. Goodson* (1975), 1975 Ok 71, 537 P.2d 330; *Rego Displays, Inc. v. Fournier* (1977), 119 R.I. 469, 379 A.2d 1098. We acknowledge, however, that some courts adhere to the contrary position. See, e.g., *DeGiorgio v. Megabyte Internatl., Inc.* (1996), 266 Ga. 539, 468 S.E.2d 367 (only tangible customer lists warrant protection as trade secrets); and *Pearce v. Austin* (La.App.1985), 465 So.2d 868 (same).

{¶ 20} The majority position among our sister states is relevant with respect to the legislature's intent, because as we recognized in *State ex rel. Besser v. Ohio State Univ.* (2000), 87 Ohio St.3d 535, 721 N.E.2d 1044, "[t]he purpose of the

enactment of the Uniform Trade Secrets Act was * * * 'to make uniform the law with respect to their subject among states enacting them.'" Id. at 539, quoting R.C. 1333.68 and citing the title of Am.Sub.H.B. No. 320, 145 Ohio Laws, Part III, 5403.

{¶ 21} Treatises on the subject of trade secrets also support the majority position that the determination of whether a client list is a protected trade secret does not depend on whether a former employee has memorized it. For example, in 2 Louis Altman, Callmann on Unfair Competition, Trademarks and Monopolies (5th Ed.2005) 14–192 through 14–195, Section 14.25, the text states, "As to customer lists, the older rule in some jurisdictions permits taking by memorization. In principle, however, the distinction between written and memorized information should not be encouraged. The form of the information and the manner in which it is obtained are unimportant; the nature of the relationship and the defendant's conduct should be the determinative factors. The distinction places a premium upon good memory and a penalty upon forgetfulness, and it cannot be justified either from a logical or pragmatic point of view." (Footnotes omitted.)

{¶ 22} Citing more recent cases, the Callmann treatise explains, "The modern trend is to discard the written-memorized distinction; and the Uniform Trade Secrets Act has abrogated the common law rule which permitted misappropriation of customer lists by memorization." (Footnotes omitted.) Id. at 14–195. See also N. Atlantic Instruments, Inc. v. Haber (C.A.2, 1999), 188 F.3d 38, 47, quoting 4 Roger M. Milgrim, Milgrim on Trade Secrets (1998), Appx. 15A–3 ("the majority rule is * * * that appropriation by memory will be restrained under the same circumstances as will appropriation by written list"). And see James Pooley, Trade Secrets (7th Ed.2001) 6–14, Section 6.02[2][c], stating, "The widely accepted rule is that memorization is no defense, and that unauthorized asportation of data in one's head is no more proper than taking it on paper or in electronic form."

{¶ 23} We recognize that the protection of trade secrets involves a balancing of public policies, and as stated in E.I. duPont de Nemours & Co. v. Am. Potash & Chem. Corp. (1964), 41 Del.Ch. 533, 547, 200 A.2d 428, "Among the substantial and conflicting policies at play * * * are the protection of employers' rights in their trade secrets * * * versus the right of the individual to exploit his talents." However, by adopting the Uniform Trade Secrets Act, with the express purpose "to make uniform the law with respect to their subject among states," the General Assembly has determined that public policy in Ohio, as in the majority of other jurisdictions, favors the protection of trade secrets, whether memorized or reduced to some tangible form. And as we stated in Johnson v. Microsoft Corp., 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, "The Ohio General Assem-

bly, and not this court, is the proper body to resolve public policy issues." Id. at ¶ 14, citing *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672 ("the General Assembly should be the final arbiter of public policy").

{¶ 24} Based on the foregoing, we conclude that the determination of whether a client list constitutes a trade secret pursuant to R.C. 1333.61(D) does not depend on whether it has been memorized by a former employee. Information that constitutes a trade secret pursuant to R.C. 1333.61(D) does not lose its character as a trade secret if it has been memorized. It is the information that is protected by the UTSA, regardless of the manner, mode, or form in which it is stored—whether on paper, in a computer, in one's memory, or in any other medium.

{¶ 25} Every employee will of course have memories casually retained from the ordinary course of employment. The Uniform Trade Secrets Act does not apply to the use of memorized information that is not a trade secret pursuant to R.C. 1333.61(D).

{¶ 26} Moreover, we recognize that no conflict exists between the appellate court's decision in this case and the decision of the Cuyahoga County Court of Appeals in *Greenwald*, because the latter case predated the legislature's adoption of the UTSA.

{¶ 27} In this case, AMA's client list constituted a trade secret pursuant to R.C. 1333.61(D), and the fact that Martin had memorized that client list before leaving AMA does not change its status as a trade secret or remove it from the protection of the UTSA. For these reasons, we affirm the judgment of the court of appeals.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

---

Fry, Waller & McCann Co., L.P.A., Barry A. Waller, and Derek L. Graham, for appellee.

McNees, Wallace & Nurick, L.L.C., Samuel N. Lillard, and Elizabeth J. Birch, for appellant.