[Cite as *Inwood Village, Ltd. v. Christ Hosp.*, 2012-Ohio-3434.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| INWOOD VILLAGE, LTD., | : | APPEAL NO. C-110730 |
| and | : | TRIAL NO. A-1102997 |
| DORIAN DEVELOPMENT VI, LTD., | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| THE CHRIST HOSPITAL, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 1, 2012

*Charles G. Atkins* and *Christopher H. Hurlburt*, for Plaintiffs-Appellants,

*Dinsmore & Shohl LLP, Mark A. Vander Laan,* and *Bryan E. Pacheco*, for Defendant-Appellee.

Please note:  This case has been removed from the accelerated calendar.

**SYLVIA S. HENDON, Judge.**

{¶1}    Plaintiffs-appellants Inwood Village, Ltd., and Dorian Development VI, Ltd., developers of the Inwood Village project located in the Mt. Auburn area of Cincinnati, have appealed from the trial court's entry granting defendant-appellee The Christ Hospital's motion to dismiss the complaint.

{¶2}    Because we find that the trial court properly dismissed all claims in the developers' complaint, we affirm that court's judgment for the reasons that follow.

*Facts*

{¶3}    The developers are the owners of several parcels of land in Mt. Auburn that are contiguous to Christ Hospital. They sought to construct a residential development on their property.  In March of 2005, the developers were presented with a funding-commitment letter from the city of Cincinnati.  This funding commitment was issued by the director of the city's Department of Community Development and Planning.  It provided that the director would recommend that the city transfer city-owned lots within the project area to the developers, provide approximately $1.5 million in project assistance to remove slum and blight, and provide $1.1 million for phased public improvements.  The letter further outlined numerous conditions that these recommendations were contingent upon, and it was signed by both the city and the developers.

{¶4}    In June of 2005, city council passed an ordinance approving funding for the project.  A funding agreement was attached to the ordinance, and it formally memorialized the terms of the parties' arrangement.  The developers secured a loan

2

commitment from a major bank to fund the development. But the bank would not go forward with its commitment until the city corrected several typographical errors in the funding agreement concerning the number of residential units to be constructed. Despite requests from the developers, the city failed to issue a corrected agreement. And it further delayed performance of its own responsibilities towards the project, including performing public improvements, for a period of several years. In spite of this, the developers spent a substantial amount of money on their own obligations under the agreement, including building a model condominium at the city's request.

{¶5} On May 20, 2010, the developers were informed that the city was refusing to proceed with the project and would not fund the development. The city's withdrawal was precipitated by Christ Hospital's interest in expanding onto the land planned for the Inwood Village development project. When withdrawing from the project, the city manager allegedly stated that "[g]iven that Christ's plans for expansion are now in the open, containing investment and job growth over a period of time, it is not plausible that the City funding for the Glencoe Project could win majority support of city council."

{¶6} The developers, in a separate action, brought suit against the city and raised claims relating to the city's abandonment of the Inwood Village project. The developers further filed this action against Christ Hospital seeking monetary damages and alleging, as labeled in their complaint, that Christ Hospital had tortiously interfered with a written contract, tortiously interfered with a contract implied in fact, and tortiously interfered with a contract in promissory estoppel. As stated, the trial court granted Christ Hospital's Civ.R. 12(B)(6) motion to dismiss all claims.

3

{¶7}    Appellate review of a ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6) is de novo.  *Battersby v. Avatar, Inc.*, 157 Ohio App.3d 648, 2004-Ohio-3324, 813 N.E.2d 46, ¶ 5 (1st Dist.).  When reviewing whether the complaint fails to state a claim upon which relief may be granted, we must construe all allegations in the plaintiffs' complaint to be true and must make all reasonable inferences in favor of the nonmoving party.  *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).  Before a motion to dismiss may be granted, it must appear beyond a reasonable doubt from the face of the complaint that the plaintiff can prove no set of facts that would entitle it to relief.  *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

### Express Contract

{¶8}    In their first assignment of error, the developers argue that the trial court erred in dismissing their claims for tortious interference with the city's performance of an express contract.

{¶9}    The elements of the tort of tortious interference with a contract are "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages."  *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176, 707 N.E.2d 853 (1999).  As evidenced by the first element, one cannot be liable for tortious interference if there was no established contract with which to interfere.  This issue is dispositive of the developers' claims.

{¶10} The developers appended to their complaint several documents pertaining to the city's funding of the Inwood Village project, but none constitute a

4

valid contract. The only document in the record signed by both parties to this appeal is the funding-commitment letter issued by the city's director of the Department of Community Development and Planning. This letter makes clear that the director would *recommend* funding assistance from the city. And it further lays out numerous contingencies that must be met before the financing recommendation would be acted upon. This letter was not a contract. We next consider Ordinance 208-2005. Upon recommendation from the city manager, city council passed this ordinance authorizing the city manager to take all necessary steps to disperse the approved funding to the developers. But, crucially, the city manager never acted on this ordinance. And although a formal funding agreement outlining the terms of the parties' arrangement was drafted, it was not signed by the city or the developers.

{¶11} Aware that no one document constitutes a traditional contract in this case, the developers urge us to consider these documents in unity to find a valid contract. The elements of a contract include an offer, acceptance, capacity to contract, consideration, manifestation of mutual intent, and legality of object and of consideration. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. But even considering these documents together, we still cannot find the existence of a valid contract. The record demonstrates that, at one point in time, the city clearly intended to assist in the funding of the Inwood Village project. But the parties simply executed no document formally establishing the city's contractual obligations towards the project. And in the absence of a contract, Christ Hospital cannot be found to have committed any type of tortious interference.

{¶12} The trial court properly dismissed the developers' claims for tortious interference with an express contract. The first assignment of error is overruled.

### Contract Implied in Fact

{¶13}  In their second assignment of error, the developers argue that the trial court erred in dismissing their claims for tortious interference with the city's performance of a contract implied in fact.

{¶14}  The developers alleged in their complaint that Ordinance 208-2005 and the unsigned funding agreement embodied the entire agreement and understanding of the relationship between the parties, and that they constituted a contract implied in fact.  But a municipality cannot be bound by a contract implied in fact.  *Wellston v. Morgan*, 65 Ohio St. 219, 228, 62 N.E.2d 127 (1901).  A municipality is only liable in contract when the agreement is express and entered into by ordinance or resolution of council.  *Id.*  In the absence of an implied contract, there was no contract with which Christ Hospital could have interfered.  The trial court did not err in dismissing the developers' claims for tortious interference with a contract implied in fact, and the second assignment of error is overruled.

### Tortious Interference with Business Relationships

{¶15}  In their fourth assignment of error, the developers argue that the trial court erred in dismissing the remaining two claims in their complaint.  The complaint labeled these claims as tortious interference with contract in promissory estoppel.  The trial court treated the claims as labeled, and it dismissed them on the grounds that no such cause of action has been recognized in Ohio.  On appeal, the developers urge us to construe their claims as ones for tortious interference with a business relationship, rather than as claims for tortious interference with a contract in promissory estoppel.

6

{¶16} The relevant claims in the developers' complaint are supported with allegations that the developers have "sustained damages in [their] ongoing contractual relationship with the City because of the tortious, deliberate, intentional and malicious interference by The Christ Hospital with said contractual relationship arising from the previously alleged documents, promises and assurances by the City to Inwood upon which Inwood reasonably relied to its detriment." Based on these allegations, we will treat these claims, as argued by developers, as claims for tortious interference with a business relationship, rather than as labeled in the complaint.

{¶17} The tort of interference with a business relationship occurs when "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another * * *." *A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. and Constr. Trades Council*, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995). This court has previously compared this tort with the tort of interference with a contractual relationship. We stated that tortious interference with a business relationship "occurs when the result of the improper interference is not a breach of contract, but the refusal of a third party to enter into or continue a business relationship with the plaintiff." *Sony Electronics, Inc. v. Grass Valley Group, Inc.*, 1st Dist. Nos. C-010133 and C-010423, 2002 Ohio App. LEXIS 1304, *9 (Mar. 22, 2002).

{¶18} The elements of tortious interference with a business relationship are largely adapted from the Restatement of the Law 2d, Torts, Section 766 (1979). *See Dryden v. Cincinnati Bell Tel.*, 135 Ohio App.3d 394, 400, 734 N.E.2d 409 (1999). A crucial element of the tort is that the alleged interference was not privileged or

7

justified. The Restatement is instructive in making such a determination. Restatement of the Law 2d, Torts, Section 773 (1979) provides that

{¶19} [o]ne who, by asserting in good faith a legally protected interest of his own * * * intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction. *See Clauder v. Holbrook*, 1st Dist. No. C-990145, 2000 Ohio App. LEXIS 245, *10 (Jan. 28, 2000).

{¶20} The developers alleged in their complaint that Christ Hospital "wanted all of the Developer's lots and the adjacent City lots for its planned expansion to the north," and that "[t]he Christ Hospital had spent the early part of 2009 on a strategic plan to determine their growth plans. DiPilla said the concept and goal of the plan was to concentrate their growth near their current hospital location." The complaint clearly alleges that Christ Hospital desired the land planned for the Inwood Village project for its own expansion and economic growth. The hospital's actions in acquiring this land were taken to further this purpose and to protect the hospital's own interests. The record demonstrates that, even if Christ Hospital had interfered in the business relationship between the city and the developers, such action was privileged.

{¶21} The trial court properly dismissed the developers' claims for tortious interference with a business relationship. The fourth assignment of error is overruled.

{¶22} We briefly address the developers' third assignment of error, in which they argue that the trial court's dismissal of their claims was premised on its reliance on two inapposite Ohio Supreme Court cases. The developers first take issue with the trial court's reliance on the case of *Wellston v. Morgan,* 65 Ohio St. 219, 62 N.E.2d 127. We have already discussed the applicability of *Morgan* to the case before us and need not revisit our analysis. The developers next argue that the trial court erred in relying on *Hortman v. City of Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716. But we find no specific mention of this case in the trial court's decision, nor have we relied upon it in determining this appeal. Further, we have previously rejected this same argument in *Inwood Village Ltd. v. Cincinnati*, 1st Dist. No. C-110117, 2011-Ohio-6632, ¶ 18. The third assignment of error is overruled.

{¶23} The trial court properly granted Christ Hospital's motion to dismiss the developers' complaint. The judgment of the trial court is affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **FISCHER, J.,** concur.

Please Note:
  The court has recorded its own entry on the date of the release of this opinion.