[Cite as *Retirement Corp. of Am. v. Henning*, 2019-Ohio-4589.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| THE RETIREMENT CORPORATION OF AMERICA, | : | APPEAL NO. C-180643 |
|  |  | TRIAL NO. A-1702512 |
| and | : |  |
|  | : | *O P I N I O N.* |
| FIFTH THIRD BANK, | : |  |
| Plaintiffs-Appellants, | : |  |
| vs. | : |  |
| DAVID B. HENNING, | : |  |
| and | : |  |
| FORMIDABLE ASSET MANAGEMENT, | : |  |
| Defendants-Appellees. | : |  |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:    Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  November 8, 2019

*Zieger, Tigges & Little LLP*, *Marion H. Little, Jr.*, and *Christopher J. Hogan*, for Plaintiffs-Appellants,

*Freking Myers & Ruel, LLC, Kelly Mulloy Myers* and *Brian P. Gillan*, for Defendant-Appellee David B. Henning,

*Stagnaro, Saba & Patterson Co., L.P.A.*, *Peter A. Saba* and *Jeffrey M. Nye*, for Defendant-Appellee Formidable Asset Management.

**MYERS, Judge.**

{¶1}    The Retirement Corporation of America ("RCA") and Fifth Third Bank appeal the judgment of the Hamilton County Court of Common Pleas dismissing their action for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, tortious interference with prospective business relationships, and spoliation of evidence against RCA's former employee, David B. Henning, and Henning's new employer, Formidable Asset Management ("Formidable").   For the reasons that follow, we affirm the trial court's judgment dismissing the breach-of-contract claim and reverse its judgment dismissing the remaining claims.

### *I. Background Facts and Procedure*

{¶2}    Henning was employed by RCA, a registered investment advisor, from March 2010 to April 2017.   In his capacity as a relationship manager, Henning provided investment-related advisory and wealth-planning services to RCA customers.   Henning's employment agreement with RCA restricted him from disclosing or using RCA's confidential information at any time after the termination of his employment and from soliciting RCA customers for a period of 18 months following the termination of his employment.

{¶3}    The employment agreement contained the following provisions:

[5(a)] Employee agrees that during the term of Employee's employment with Employer and for the periods of time set forth in subsections 5(a)(i) through 5(a)(iii) respectively after the termination of Employee's employment with Employer for any reason, whether voluntary or involuntary, Employee will not, directly or indirectly, do or suffer any of the following:

(i)      For eighteen (18) months after the termination of Employee's employment with Employer for any reason, whether voluntary or involuntary, solicit any person who is an employee, officer, agent, customer or supplier of the Employer or any of

2

Employer's affiliates or subsidiaries to terminate said relationship.

(ii) For eighteen (18) months after the termination of Employee's employment with Employer for any reason, whether voluntary or involuntary, solicit, attempt to solicit, accept, attempt to accept, direct or attempt to direct, divert or attempt to divert, take away or attempt to take away business of or from any customers of the Employer or any of Employer's affiliates or subsidiaries, either for himself or for any other corporation, limited liability company, partnership, proprietorship, firm, association or other business entity in competition with the Employer or any of its affiliates or subsidiaries or advise or assist any person or entity with respect thereto. As used in this Agreement the term "customer" means any customer, whether actual or potential, of Employer or any of Employer's affiliates and subsidiaries with whom Employee had business contact, or whose identity Employee learned through employment with Employer or Employer's affiliates or subsidiaries, during the twelve (12) months immediately before Employee's employment with Employer ended.

(iii) At any time after the termination of Employee's employment with Employer for any reason, whether voluntary of [sic] involuntary, disclose, divulge, discuss, copy, reproduce, publish, reveal, show, use or otherwise communicate in any manner any Confidential Information. Employee acknowledges and agrees that all Confidential Information is, and shall remain, the property of Employer. Upon termination of Employee's employment with Employer, Employee agrees not to remove such Confidential Information, copy it, or commit it

3

to memory to use outside of Employer. Employee shall promptly return to Employer all copies and originals of all documents and other materials containing or referring to Confidential Information and any other materials that belong to Employer or its affiliates or subsidiaries. The covenant in this subsection 5(a)(iii) has no temporal, geographical or territorial limitation and is not limited by the time periods set forth in the preceding subsections.

{¶4} "Confidential Information" was defined in the employment agreement to include the following:

[C]onfidential information and trade secrets, which include customer lists, identities of customer contact persons, lists of prospective customers, accounting and tax projections, compilations of information, records, and specifications, marketing programs and materials, employee training programs, client service and retention strategies, methods of operating, intellectual property, information regarding customers and employees of Employer, and information about the Employer that is not known to the public and gives Employer an opportunity to obtain an advantage over competitors who do not know such information[.]

{¶5} In early 2017, RCA was acquired by, and ultimately became a subsidiary of, Fifth Third Bank. On April 3, 2017, Henning and RCA entered into an agreement to terminate Henning's employment agreement with RCA (the "termination agreement"), which contained a provision expressing that "[e]mployee desires to continue his * * * employment with RCA following the termination of the [e]mployment [a]greement." In addition, the termination agreement provided:

1. Effective upon the Closing (as defined in the Purchase Agreement), the Employment Agreement is hereby terminated, and all rights

and obligations under the Employment Agreement are canceled and void.

* * *

2. Effective upon the Closing, to the extent permitted under applicable law, each of Employee and RCA releases and forever discharges the other from any and all obligations under the Employment Agreement.

{¶6} Fifth Third acquired RCA as planned and the closing took place on April 7, 2017. Henning resigned from RCA on April 21, 2017, and immediately began working for Formidable and soliciting RCA customers.

{¶7} According to the amended complaint, in the weeks prior to his resignation, Henning accessed RCA's password-protected computer system and emailed from and to his personal email account detailed spreadsheets containing contact and account information for RCA customers. He provided these customer-related documents in electronic format to Formidable and prepared a separate document that contained the information. After saving the electronic documents that he removed, Henning deleted the emails by which he had sent and received the documentation.

{¶8} After his resignation, Henning allegedly used the RCA customer information to begin soliciting RCA customers. He also allegedly logged into RCA's computer system and either accessed or tried to access RCA's confidential customer information.

{¶9} After being advised that RCA and Fifth Third Bank had raised concern about Henning's removal of customer information, Formidable took the electronic customer contact and account information that Henning had removed from RCA, which was contained on two external drives, and physically burned it.

{¶10} On May 5, 2017, RCA and Fifth Third Bank filed their action for breach of contract, breach of fiduciary duty, and misappropriation of trade secrets against

Henning. And they later amended their complaint to include Formidable and to add claims for tortious interference and spoliation.

{¶11} Henning filed an answer, counterclaims, and a third-party complaint against Daniel C. Kiley, a Fifth Third Bank employee who was the former chief executive officer of RCA. Formidable filed an answer. Thereafter, both Henning and Formidable moved for judgment on the pleadings pursuant to Civ.R. 12(C).

{¶12} On June 1, 2018, the trial court granted the motion and dismissed all claims against Formidable except for the spoliation claim.[1] On September 26, 2018, Henning voluntarily dismissed his counterclaims against RCA and Fifth Third. Then, on October 24, 2018, the trial court dismissed all claims against Henning and the remaining spoliation claim against Formidable and certified the judgment for immediate appeal under Civ.R. 54(B). This appeal followed.

{¶13} Even though our record demonstrates that Henning's third-party claim against Kiley has not been resolved, the trial court's Civ.R. 54(B) determination that there is no just reason for delay has not been challenged on appeal, and we agree that the order is a final order. Therefore, we will address the merits of the appeal.

## II. Judgment on the Pleadings

{¶14} In ruling on the Civ.R. 12(C) motions, the trial court determined that the breach-of-contract claim by RCA and Fifth Third could not stand because the termination agreement constituted a complete release by RCA of Henning's obligations under the employment agreement. In addition, the court ruled that because the termination agreement released Henning from his obligations with respect to the use of confidential information and his nonsolicitation obligations thereunder, the claims by RCA and Fifth Third for misappropriation of trade secrets, tortious interference, and breach of fiduciary duty could not survive. The court dismissed the spoliation claim because RCA and Fifth Third Bank could not show

---

[1] RCA and Fifth Third Bank appealed the trial court's June 1, 2018 decision in the case numbered C-180368. We dismissed that appeal for lack of a final, appealable order.

that the destruction of the external drives caused disruption to their case because the court had deemed their claims to be nonviable.

{¶15} In a single assignment of error, RCA and Fifth Third argue that the trial court erred by dismissing their action against Henning and Formidable pursuant to Civ.R. 12(C). Dismissal on a Civ.R. 12(C) motion for judgment on the pleadings is proper when a court construes as true the material allegations in the complaint, along with all reasonable inferences to be drawn therefrom, and finds, beyond doubt, that the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, ___ Ohio St.3d ____, 2019-Ohio-2851, ____ N.E.3d ___, ¶ 8. We review a trial court's ruling on a Civ.R. 12(C) motion for judgment on the pleadings de novo. *Id.*; *Chase Home Fin., LLC v. Literski*, 1st Dist. Hamilton Nos. C-130404 and C-130433, 2014-Ohio-615, ¶ 10.

### A. Breach of Contract

{¶16} RCA and Fifth Third Bank argue that the trial court erred by dismissing their breach-of-contract claim upon its determination that the termination agreement released Henning from his obligations under the employment agreement. They assert that the termination agreement was ineffective and that Henning remained subject to the obligations in his employment agreement with RCA. We disagree.

{¶17} According to RCA and Fifth Third Bank, the termination agreement was unenforceable due to Henning's failure to fulfill his larger promise to continue employment with them and to execute a new agreement containing restrictive covenants with Fifth Third Bank. They argue that executing a new agreement was a condition precedent to termination of the prior agreement.

{¶18} Contracts that are clear and unambiguous will be enforced according to their terms. *Swaters v. Lawson,* 1st Dist. Hamilton Nos. C-130604 and C-130627, 2014-Ohio-2252, ¶ 11. "[A]bsent fraud, mistake or other invalidating cause, the

parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Chase Home Fin.*, 1st Dist. Hamilton Nos. C-130404 and C-130433, 2014-Ohio-615, at ¶ 15, quoting *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000).

{¶19} Here, the termination agreement is clear and unambiguous. It provided that RCA "releases and forever discharges [Henning] from any and all obligations" under the prior employment agreement. This included soliciting RCA customers or disclosing or using any confidential information. Because the termination agreement is clear and unambiguous, it will be enforced according to its terms unless RCA and Fifth Third Bank have a legal defense.

{¶20} RCA and Fifth Third Bank argue that they have alleged a condition precedent which would nullify the termination agreement. They argue that an oral agreement existed requiring Henning to execute a new employment agreement before the termination agreement would become effective. There is no such condition in the written contract. RCA and Fifth Third Bank rather rely on a purported oral agreement. Taking the allegations as true in this regard, RCA and Fifth Third Bank have not stated a claim.

{¶21} An oral agreement may, in certain limited situations, establish a condition precedent to the existence of a written contract. *Beatley v. Knisley*, 183 Ohio App.3d 356, 2009-Ohio-2229, 917 N.E.2d 280, ¶ 15 (10th Dist.). However, such an oral agreement may not modify the terms of the written contract. *Id.* at ¶ 16. Nor may the claimed condition precedent be inconsistent with the express terms of the writing. *Campbell v. George J. Igel & Co., Inc.*, 2013-Ohio-3584, 3 N.E.3d 219, ¶ 24 (4th Dist.). When the subject matter of a condition precedent is covered by the written contract, "the condition may not be shown by parol evidence to be different from the manner in which it is expressed in the writing." *Id.*, quoting *Hiatt v. Giles*, 2d Dist. Darke No. 1662, 2005-Ohio-6536, ¶ 32.

{¶22} Here, the alleged condition precedent to the effectiveness of the termination agreement was a promise by Henning to "continue employment with RCA/Fifth Third, and execute new agreement(s), containing restrictive covenants, with Fifth Third." The subject matter of that condition, however, was covered by the express terms of the termination agreement, which stated that Henning would "continue his * * * employment with RCA following the termination of the Employment Agreement." Thus, the termination agreement specifically contemplated that Henning would continue to work for RCA without any employment agreement, not that he would execute a new employment agreement. Because the subject matter of the alleged condition precedent directly contradicted the express terms of the termination agreement, there can be no oral condition precedent. Therefore, the trial court properly determined as a matter of law that execution of a new employment agreement was not a condition precedent to the effectiveness of the termination agreement. Consequently, the termination agreement released Henning from his contractual obligations under the employment agreement, and the trial court did not err by dismissing the breach-of-contract claim against Henning.

### B. Ohio Uniform Trade Secrets Act

{¶23} Upon its determination that Henning was no longer subject to the contractual restrictions under the employment agreement, the trial court concluded that Henning was released from his obligations with respect to confidentiality and nonsolicitation, and that, therefore, the claim against Henning for misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act ("OUTSA"), R.C. 1333.61 through 1333.69, could not survive.

### 1. Trade Secret

{¶24} The first issue we address is whether RCA and Fifth Third Bank have alleged that customer lists and related information were trade secrets. We first note

that the parties, by their prior agreement, recognized that customer lists and related customer information were confidential and trade secrets. While not determinative of the issue, we consider this as part of the pleadings in determining whether RCA and Fifth Third Bank have stated a claim.

{¶25} In the proceedings below, the trial court determined that, because all contractual obligations of nondisclosure were released by the termination agreement, RCA and Fifth Third Bank failed to properly allege that RCA's customer information continued to be a trade secret under Ohio law.

{¶26} Under R.C. 1333.61(D), a "trade secret" is defined as:

[I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

{¶27} A customer list can constitute a trade secret under R.C. 1333.61(D). *Al Minor & Assoc., Inc., v. Martin*, 117 Ohio St.3d 58, 2008-Ohio-292, 881 N.E.2d 850, ¶ 27. Therefore, we turn to the "economic value" and "reasonable efforts" components of R.C. 1333.61(D)(1) and (2) to determine whether RCA and Fifth Third Bank have stated a claim.

{¶28} The trial court made no determination as to whether RCA had alleged sufficient facts to support the "economic value" element of a trade secret under R.C. 1333.61(D)(1). Instead, the court assumed that this element was satisfied and

proceeded to find that RCA and Fifth Third Bank had not alleged sufficient facts to support the "reasonable efforts" element of a trade secret under R.C. 1333.61(D)(2), following termination of the original employment agreement.

### a. Reasonable Efforts

{¶29} The trial court determined that RCA and Fifth Third Bank could not establish that its customer information was the subject of reasonable efforts to maintain its secrecy because RCA continued to employ Henning after releasing him from the confidentiality obligations under the employment agreement. However, the presence of an existing confidentiality agreement is not required to find that a trade secret exists. *See Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co.,* 109 Ohio App.3d 786, 791, 673 N.E.2d 182 (10th Dist.1996); *MNM & MAK Ents., LLC v. HIIT FIT Club, LLC*, 10th Dist. Franklin No. 18AP-980, 2019-Ohio-4017, ¶ 30; *Al Minor & Assoc.,* 117 Ohio St.3d 58, 2008-Ohio-292, 881 N.E.2d 850 (employee liable for misappropriation, despite the lack of an employment agreement, where he had memorized customer lists). "[T]he obligations imposed by law to maintain the confidentiality of trade secrets exist regardless of whether there is any written agreement." *84 Lumber Co., L.P., v. Houser*, 188 Ohio App.3d 581, 2010-Ohio-3683, 936 N.E.2d 131, ¶ 69 (11th Dist.); *see Gerling & Assoc., Inc. v. Odulair, LLC*, S.D.Ohio No. 2:16-cv-1000, 2017 WL 2790669 (June 28, 2017). The absence of a formal, written confidentiality agreement is not determinative of whether a party has taken reasonable efforts to maintain secrecy. *Hoffman-LaRoche, Inc. v. Yoder*, 950 F.Supp. 1348, 1361 (S.D.Ohio 1997).

{¶30} Here, RCA and Fifth Third Bank alleged that RCA maintained "extensive password-protected and otherwise secure access to computer-based customer information, implementing security measures to protect office space where customer information is maintained[.]" In addition, they alleged that RCA required "all employees, including Henning, to acknowledge their agreement to comply with a detailed compliance manual. Such manual sets forth, among other things,

obligations applicable to Henning that further reflect and protect the confidentiality of RCA's customer information." These allegations sufficiently set forth the "reasonable efforts" element of a trade secret under R.C. 1333.61(D)(2).

### b. Economic Value

{¶31} Because we review a Civ.R. 12(C) motion de novo, we must also consider whether RCA and Fifth Third Bank sufficiently alleged the "economic value" element of a trade secret under OUTSA. The amended complaint alleged that RCA maintained "substantial confidential, financial, account, and contact information for RCA customers," which included "customer records, lists of customers, and other customer-related information, including account numbers," and that the information derived independent economic value from not being generally known to the public or competitors. This is sufficient. We find that RCA and Fifth Third sufficiently alleged the "economic value" element of a trade secret under R.C. 1333.61(D)(1).

### 2. Misappropriation

{¶32} The second issue we must examine is whether RCA and Fifth Third sufficiently alleged the misappropriation element of an OUTSA claim. Under R.C. 1333.61(B), "misappropriation" means any of the following:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

(a) Used improper means to acquire knowledge of the trade secret;

(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was

derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

(c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

{¶33} In the amended complaint, RCA and Fifth Third Bank alleged that Henning took customer information without authorization and provided the information to Formidable; that both of them used the information to solicit RCA customers; and that Formidable received and used the customer information without authorization and with reason to know it had been acquired improperly. Thus, RCA and Fifth Third Bank sufficiently alleged the misappropriation element of an OUTSA claim.

{¶34} Construing the allegations in the amended complaint as true and construing all reasonable inferences in favor of RCA and Fifth Third, we hold that they may be able to prove facts in support of their OUTSA claim that would entitle them to relief. Therefore, the trial court erred by dismissing the OUTSA claim.

### C. Breach of Fiduciary Duty[2]

{¶35} Next, RCA and Fifth Third Bank argue that the trial court erred by ruling that an employee owes no duty of loyalty or good faith to the employer absent a written agreement codifying such duties. The trial court determined that the

---

[2] Although RCA and Fifth Third Bank label the claim a "breach of fiduciary duty," they allege that Henning breached his duty of loyalty and good faith to his employer. In some instances, an employee can be a fiduciary of an employer, however, employees typically owe nothing more than a duty of good faith and loyalty to their current employer. *See Lombardo v. Mahoney*, 8th Dist. Cuyahoga No. 92608, 2009-Ohio-5826, ¶ 19, citing *Connelly v. Balkwill*, 160 Ohio St. 430, 440, 116 N.E.2d 701 (1954).

termination agreement released Henning from his obligations of confidentiality and nonsolicitation, including his duty of loyalty to RCA.

{¶36} An employee's duty of good faith and loyalty exists regardless of whether an employment agreement exists. *See MNM & MAK Ents., LLC*, 10th Dist. Franklin No. 18AP-980, 2019-Ohio-4017, at ¶ 30. This common-law duty is breached when an employee engages in competition with the employee's present employer while still employed. *Veterinary Dermatology, Inc. v. Bruner*, 1st Dist. Hamilton No. C-040648, 2005-Ohio-5552, ¶ 16. In the absence of a contract not to compete, an employee is free to compete with a former employer upon termination of employment. *Dill-Elam, Inc. v. Smallwood Bros. Transp. Serv.,* 12th Dist. Clermont No. CA2005-01-001, 2005-Ohio-6554, ¶ 8, citing *Curry v. Marquart*, 133 Ohio St. 77, 111 N.E.2d 868 (1937), paragraph one of the syllabus. The employee may solicit the former employer's customers, so long as there is no disclosure or use of trade secrets belonging to the former employer for the benefit of the new employer in a competing business. *Id.*

{¶37} The trial court erred by holding that Henning, while still employed by RCA, owed no duty of loyalty to RCA in the absence of an employment agreement. Even though the termination agreement released Henning from his contractual duties, it did not release him from his common-law duty of good faith and loyalty that continued through his employment. In their amended complaint, RCA and Fifth Third Bank alleged that Henning violated this duty by removing RCA's confidential customer information without authorization and for an unauthorized purpose, while still employed by RCA. These allegations sufficiently stated a claim for breach of an employee's duty of good faith and loyalty, and the trial court erred by dismissing the claim.

### D. Tortious Interference

{¶38} The torts of interference with a business relationship and interference with contract generally occur when a person, without privilege to do so, induces or

14

otherwise purposely causes a third person not to enter into or continue a business relation with another. *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995); *Inwood Village, Ltd., v. Christ Hosp.*, 1st Dist. Hamilton No. C-110730, 2012-Ohio-3434, ¶ 17. A crucial element of the tort is that the alleged interference was not justified or privileged. *Inwood* at ¶ 18.

**{¶39}** The trial court found that the amended complaint did not sufficiently allege a lack of justification because the termination agreement "released Henning from his obligations with respect to confidentiality, nonsolicitation and noncompetition." However, as we have stated, the termination agreement did not eliminate Henning's common-law or statutory duties. In other words, the termination agreement released Henning from his contractual duty not to solicit RCA customers or disclose confidential information, but it did not release him from his duties under OUTSA.

**{¶40}** In the amended complaint, RCA and Fifth Third Bank alleged that they have valid contracts and business relationships with customers, that Henning and Formidable knew about, and that Henning and Formidable intentionally interfered with their current and prospective contracts and relationships by soliciting those customers using wrongful means, including via violation of OUTSA, without justification. These allegations sufficiently stated a claim for tortious interference, and the trial court erred by dismissing the claim.

### E. Spoliation

**{¶41}** The tort of intentional spoliation of evidence has five elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Elliott-Thomas v. Smith*, 154 Ohio St.3d 11, 2018-Ohio-1783, 110 N.E.2d 1231, ¶ 10, quoting *Smith v.*

15

*Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993). The trial court concluded that RCA and Fifth Third Bank could not meet the disruption element of their spoliation claim because the destruction of the external drives containing customer information would have no impact on their case where no viable claims remained.

{¶**42**} The amended complaint alleged that RCA and Fifth Third Bank's concerns about Henning's unlawful removal of protected customer information in violation of OUTSA were relayed to Henning and Formidable, thereby putting them on notice of probable litigation, and that Henning and Formidable willfully destroyed the customer information, which constituted key evidence in their case, thereby causing RCA and Fifth Third Bank to suffer damages. These allegations were sufficient to allege spoliation, and the trial court erred by dismissing the claim.

### III. Conclusion

{¶**43**} Consequently, we sustain the sole assignment of error in part and overrule it in part. We affirm the trial court's judgment dismissing the breach-of-contract claim and reverse its judgment dismissing the remaining claims. We remand this cause to the trial court for further proceedings.

Judgment accordingly.

**ZAYAS, P.J.**, and **CROUSE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.